HOYER & HICKS
Richard A. Hoyer (SBN 151931)
rhoyer@hoyerlaw.com
Ryan L. Hicks (SBN 260284)
rhicks@hoyerlaw.com
Nicole Gage (SBN 318005)
ngage@hoyerlaw.com
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
*tel* (415) 766-3539
*fax* (415) 276-1738

UNITED EMPLOYEES LAW GROUP, PC
Walter Haines (SBN 71075)
walter@whaines.com
5500 Bolsa Avenue, Suite 201
Huntington Beach, CA 92649
*tel* (562) 256-1047
*fax* (562) 256-1006

Attorneys for Plaintiffs
AGUSTIN BENITEZ, CARLOS MORALES,
and STEVEN VILLARREAL

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AGUSTIN BENITEZ, CARLOS MORALES, and STEVEN VILLARREAL, on behalf of themselves and all others similarly situated, | Case No.  1:18-cv-01484-SKO |
| | CLASS AND COLLECTIVE ACTION |
| Plaintiffs, | **NOTICE AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT** |
| vs. | |
| WESTERN MILLING, LLC and KRUSE INVESTMENT COMPANY, INC., and PERFECTION PET FOODS, LLC, | Date:          December 11, 2019 Time:         9:30 a.m. Courtroom:  #7 (6th Floor) Judge:        Mag. J. Sheila K. Oberto |
| Defendants. | |

TO ALL PARTIES AND ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on Wednesday, December 11, 2019, at 9:30 a.m. in

Courtroom 7 before Magistrate Judge Sheila K. Oberto of the United States District Court,

Eastern District of California, Plaintiffs AGUSTIN BENITEZ, CARLOS MORALES, and STEVEN

VILLARREAL move the Court for preliminary approval of the Stipulation of Settlement and

Release (the "Settlement Agreement" or the "Settlement," attached as Exhibit 1 to the Declaration of Ryan L. Hicks ("Hicks Dec."), filed concurrently herewith). In particular, Plaintiffs move for orders:

(1) granting preliminary approval of the Settlement Agreement as to the proposed settlement Class;

(2) conditionally certifying the Class for settlement purposes;

(3) approving the proposed schedule and procedure for completing the final approval process of the settlement as to the Class, including scheduling the final fairness hearing date;

(4) approving the Notice of Proposed Class Action Settlement ("Class Notice") (attached as Exhibit 1to the Settlement Agreement);

(5) preliminarily appointing and approving Hoyer & Hicks and United Employees Law Group, P.C. as Counsel for the Class;

(6) preliminarily approving Class Counsel's request for attorneys' fees and costs;

(7) preliminarily appointing and approving the named Plaintiffs as Class Representatives;

(8) preliminarily appointing and approving Simpluris, Inc. as the Settlement Administrator for the Class; and

(9) authorizing the Settlement Administrator to mail the approved Class Notice to the Class.

This Motion is based on this notice, the following attached Memorandum of Points and Authorities, the Declaration of Ryan L. Hicks, and all other records, pleadings, and papers on file in this action and such other evidence or argument as may be presented to the Court at the hearing on this Motion. Accompanying this Motion is also Plaintiffs' Proposed Order Granting Preliminary Approval of Settlement.

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................ 1

II. FACTUAL BACKGROUND .............................................................................................. 1

III. PROCEDURAL HISTORY................................................................................................ 2

    A.   Plaintiffs' Claims ........................................................................................................ 2

    B.   Discovery .................................................................................................................... 5

    C.   Damages Analysis ...................................................................................................... 5

    D.   Mediation ................................................................................................................... 6

IV. TERMS OF THE SETTLEMENT ...................................................................................... 6

    A.   Basic Terms ............................................................................................................... 6

    B.   Class Definition .......................................................................................................... 7

    C.   Allocation and Awards ............................................................................................... 7

    D.   Scope of Release and Final Judgment ...................................................................... 8

    E.   Settlement Administration .......................................................................................... 8

V. ARGUMENT..................................................................................................................... 9

    A.   The Court Should Grant Preliminary Approval of the Settlement as to the California Class under Rule 23. ...................................................................................................... 9

    B.   The Court Should Conditionally Certify the Class....................................................... 10

        1.   The Class is Numerous and has Been Ascertained................................................ 11

        2.   Plaintiffs' Claims Raise Common Issues of Fact or Law. ..................................... 11

        3.   Plaintiffs' Claims are Typical of the Claims of the Class. .................................... 12

        4.   Plaintiffs and Class Counsel will Adequately Represent the Class....................... 12

        5.   The Rule 23(b)(3) Requirements for Class Certification are Met. ........................ 13

    C.   The Settlement Should Be Preliminarily Approved as to the Class Because It Is Fair, Reasonable, and Adequate. .......................................................................................... 14

        1.   Procedural Fairness.............................................................................................. 15

        2.   Substantive Fairness............................................................................................. 15

        3.   The Parties have Agreed to Distribute Settlement Proceeds Tailored to the Class and Their Respective Claims. ...................................................................................... 17

        4.   The Sufficient Informal Discovery Exchange Between the Parties Enabled Them to Make Informed Decisions Regarding Settlement. ........................................................ 17

        5.   Litigating and Arbitrating These Claims in a Parallel Manner Not Only Would Delay Recovery, But Would Be Expensive, Time Consuming, and Involve Substantial Risk and Duplication....................................................................................................... 18

        6.   The Class Representative Enhancement Payments are Reasonable. .................. 19

        7.   The Requested Attorneys' Fees and Costs are Reasonable. ............................... 20

        8.   Release of Claims ................................................................................................ 22

D.      The Proposed Notices and Claims Process Are Reasonable. .............................. 23

E.    The Court Should Approve the Proposed Schedule. ................................. 25

VI. CONCLUSION ............................................................................................................ 26

# TABLE OF AUTHORITIES

**Federal Cases**

*Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964 (E.D. Cal. 2012) .................................... 17

*Aguilar v. Wawona Frozen Foods,* E.D.Cal. Case No. 1:15-cv-00093-DAD-EPG (May 19, 2017) ................................................................................................................................ 8, 23

*Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ................................................. 16

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ................................................................ 13

*Boyd v. Bechtel Corp.*, 485 F.Supp. 610 (N.D. Cal. 1979) .................................................. 20

*Chem. Bank v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ............................................ 11

*Clesceri v. Beach City Investigations & Protective Services, Inc.*, 2011 WL 320998 (E.D.Cal. Jan. 27, 2012). ............................................................................................... 15

*Davis v. Brown Shoe Co., Inc.*, No. 1:13-cv-01211-LJO-BAM, 2015 WL 6697929 (E.D. Cal. Nov. 3, 2015) ................................................................................................................ 23

*Dearaujo v. Regis Corp.*, Nos. 2:14-cv-01408-KJM-AC, 2:14-cv-01411-KJM-AC, 2016 WL 3549473 (E.D. Cal. June 30, 2016) ............................................................................... 10

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ............................................................ 27

*Ellmore v. Ditech Funding Corp.*, No. SAVC 01-0093 (C.D. Cal., Sept. 12, 2002) ............. 24

*Entin v. Barg*, 412 F.Supp. 508 (E.D. Pa. 1976) ................................................................. 18

*Franco v. Ruiz Food Prods., Inc.*, No. CV 10-02354 SKO, 2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) ............................................................................................................... 13

*Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318  (1980) ............................................ 12

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............................................. 10, 23

*Holmes v. Continental Can Co.,* 706 F.2d 1144 (11th Cir.1983) ................................... 19, 20

*In re Activision Sec. Litig.*, 723 F.Supp. 1373 (N.D. Cal. 1989) .......................................... 24

*In re Armored Car Antitrust Litig.*, 472 F.Supp. 1357 (N.D. Ga.1979) ................................ 18

*In re AT & T Mobility Wireless Data Services Sales Tax Litigation,* 789 F.Supp.2d 935 (N.D.Ill.2011) ............................................................................................................. 19, 20

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) .................... 9

*In re Four Seasons Secs. Laws Litig.*, 58 F.R.D. 19 (W.D. Okla.1972) .............................. 18

*In re Itel Secs. Litig.*, 89 F.R.D. 104 (N.D. Cal. 1981) ........................................................ 12

*In re Mego Fin. Corp. Sec. Litig.,*213 F.3d 454, 459 (9th Cir.2000) .................................... 18

*In re Sunrise Secs. Litig.*, 131 F.R.D. 450 (E.D. Pa. 1990) .................................................. 18

*In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008)........................................... 17

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................ 10, 16, 18

*Jordan v. L.A. County*, 669 F.2d 1311 (9th Cir.)..................................................................... 12

*Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. 2009) .................................. 23

*Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690 (E.D. Cal. Sept. 11, 2008) ..................................................................................................................... 20

*Lounibos v. Keypoint Gov't Sols. Inc.*, No. 12-cv-00636-JST, 2014 WL 558675 (N.D. Cal. Feb. 10, 2014)......................................................................................................................... 10

*Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443 (E.D. Cal. 2013) ............................. 20

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ..................................... 27

*Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468 (E.D. Cal. 2010) ..................................... 12

*Narouz v. Charter Commc'ns, Inc.*, 591 F.3d 1261 (9th Cir. 2010) ........................................ 9

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004)........... 17

*Noyes v. Kelly Servs., Inc.,* 2:02-CV-2685-GEB-CMK, 2008 WL 3154681 (E.D. Cal. Aug. 4, 2008)........................................................................................................................................ 25

*Palacios v. Penny Newman Grain, Inc.*, 2015 WL 4078135 (E.D.Cal. July 6, 2015)..... 14, 15

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985)......................................................... 27

*Powers v. Eichen*, 229 F.3d 1249 (9th Cir. 2000)................................................................. 23

*Regino Primitivo Gomez, et al. v. H&R Gunlund Ranches, Inc.*, No. CV F 10–1163 LJO MJS, 2011 WL 5884224 (E.D. Cal. 2011)............................................................................ 24

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) .............................. 22

*Ross v. Bar None Enters., Inc.*, No. 2:13–cv–00234–KJM–KJN, 2014 WL 4109592 (E.D. Cal. Aug. 19, 2014) .................................................................................................................. 16

*Schiller v. David's Bridal Inc.*, No. 10-0616, 2012 WL 2117001 (E.D.Cal. June 11, 2012) . 15

*Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561 (E.D. Pa. 2001)..... 16

*Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994) .................................................................... 27

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ...................................................... 22, 23

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995)................................ 22

*Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482 (E.D. Cal. 2010) .................................. 23

*Vizcaino v. Microsoft Corp.*, 290 F. 3d 1043 (9th Cir. 2002)................................................ 26

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ......................................................... 12

*Wang v. Chinese Daily News, Inc.*, 737 F.3d 538 (9th Cir. 2013) ................................. 13, 14

*Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011) ................................................................................................... 17, 24

**State Cases**

*Barela v. Ralph's Grocery Co.,* No. BC070061 (Los Angeles Super. Ct., June 5, 1998) .... 24

*Big Lots Overtime Cases*, JCC Proceeding No. 4283 (San Bernardino Super. Ct., Feb. 4, 2004)............................................................................................................................ 24

*Castellanos* v. *The Pepsi Bottling Group*, No. RG07332684 (Alameda Super Ct., Mar. 11, 2010)............................................................................................................................ 22

*Davis v. The Money Store, Inc.*, No. 99AS01716, (Sac. Super. Ct., Dec. 26, 2000)........... 24

*Hasty v. Elec. Arts, Inc.*, No. CIV 444821 (San Mateo Super. Ct., Sept. 22, 2006) ............ 22

*Larios v. Degroot,* Tulare County Superior Court Case No. VCU268826 (June 21, 2018) ... 8

*Meewes v. ICI Dulux Paints*, No. BC265880 (Los Angeles Super. Ct. Sept. 19, 2003) ...... 22

*Mousai v. E-Loan, Inc.*, No. C 06-01993 SI (N.D. Cal. May 30, 2007) ................................ 22

*Novak v. Retail Brand Alliance, Inc.*, No. RG 05-223254 (Alameda Super. Ct., Sept. 22, 2009)............................................................................................................................ 22

*Sconce/Lamb Cremation Cases*, JCC Proceeding No. 2085, (Los Angeles Super. Ct., Mar. 24, 1992)..................................................................................................................... 24

*Soto v. Vander Tuig Dairy,* Tulare County Superior Court Case No. VCU269900 (June 21, 2018; Judge Mathias) ................................................................................................ 8

**Statutes**

Cal. Business and Professions Code §§ 17200 .................................................................... 4

Cal. Lab. Code §2699(l)(2) .................................................................................................. 6

Fed. R. Civ. P. 23(a)................................................................................................... 10, 11

Fed. R. Civ. P. 23(b)................................................................................................... 11, 13

Fed. R. Civ. P. 23(e).......................................................................................................... 14

Fed. R. Civ. P. 23(e)(2) ................................................................................................. 9, 10

Fed. R. Civ. P. 23(h)......................................................................................................... 24

**Other Authorities**

Conte, Newberg on Class Actions (3rd Ed. 1992) ........................................................ 27, 28

Manual for Complex Litigation (4th ed. 2004) ................................................................ 9, 28

Newberg On Class Actions  (5th ed. 2011) ......................................................................... 10

Posner, Economic Analysis of the Law (4th ed. 1992) ........................................................ 25

# I. INTRODUCTION

This class and collective action is pursued on behalf of all non-exempt workers at Defendants PERFECTION PET FOODS, LLC ("PPF"), WESTERN MILLING, LLC and KRUSE INVESTMENT COMPANY, INC., (collectively "Defendants") facilities located in Visalia, CA. It is based on Defendants' alleged violations of California labor laws, specifically with respect to their failure to provide meal and rest periods as required by applicable law. Following informal discovery, two mediations, and extensive arm's-length negotiations between counsel, the Parties have reached a settlement of this dispute. Plaintiffs seek preliminary approval of the Settlement as to the Class. The Parties are resolving numerous wage and hour claims unlikely to have been prosecuted as individual actions which were pending in both this action and a parallel arbitration, and in doing so provide substantial benefit to the Class. Specifically, the Parties have resolved the claims of 234 employees, for a total settlement of $650,000.[1] This favorable Settlement is fair, reasonable, and adequate in all respects.

# II. FACTUAL BACKGROUND

PPF is "a leading manufacturer and packager of private label and co-manufactured pet food and pet snack products," which operates facilities in Visalia, California. Plaintiffs and the Class Members (collectively, "CMs") are former and current non-exempt, hourly employees who worked at any of PPF's pet food plans and/or warehouses in Visalia, CA during the applicable limitations period. Defendants' facilities operated 24 hours per day, 7 days per week. CMs work either the day shift (7:00 a.m. to 7:30 p.m.) or the night shift (7:00 p.m. to 7:30 a.m.). Plaintiffs allege that Defendants failed to provide a timely first off-duty meal period before the end of the fifth hour of work, and also failed to provide a second meal period and a third off-duty rest period during the CMs' 12-hour shifts. Defendants brought their break policies and practices, which applied to all CMs, into compliance at the end of 2016.

As a result of the meal and rest period practices, Plaintiffs allege that the meal and rest period violations also resulted in derivative issues, including failing to pay premium pay for the

---

[1] The Settlement Agreement is attached as Exhibit 1 to the Declaration of Ryan L. Hicks ISO Preliminary Approval ("Hicks Dec.").

untimely meal periods, failing to provide accurate, itemized wage statements, and failing to pay all wages owed after termination of employment. Defendants have at all times denied, and continue to deny, all of these allegations.

### III. PROCEDURAL HISTORY

#### A.   Plaintiffs' Claims

On November 2, 2016, Plaintiffs filed a complaint alleging class wage and hour violations in the United States District Court for the Eastern District of California (*Villarreal*, *et al. v. Perfection Pet Foods, LLC*, E.D.Cal. Case No. 1:16-cv-01661-LJO-EPG; the "PPF Lawsuit"). With that class complaint, Plaintiff Steven Villareal also asserted an individual claim of interference in violation of the FMLA. On January 10, 2017 Plaintiffs filed an Amended Complaint in the PPF Lawsuit adding a claim for penalties pursuant to the Private Attorney General Act ("PAGA"). (PPF Lawsuit ECF No. 11). On February 7, 2017, PPF filed a motion to compel Named Plaintiffs to arbitrate the claims on an individual basis, which the Federal Court ultimately granted on or about May 1, 2017 and dismissed the PPF Lawsuit. (PPF Lawsuit ECF No. 23).

Later that month, Plaintiffs filed a class and representative arbitration demand with JAMS and the parties ultimately agreed on Hon. Steven A. Brick (Ret.) as arbitrator. Sadly, in June 2017, Judge Brick passed away. PPF and Plaintiffs agreed to an early mediation before selecting another arbitrator.[2] That mediation was conducted by Lynn Frank, Esq. on January 9, 2018. *Id.* at ¶5. During that mediation, Plaintiffs obtained information that revealed to them that Defendants Western Milling and Kruse Investment Company, Inc. (collectively "WM") were controlling PPF, including its human resources functions and the setting of the terms and conditions of the CMs' employment. *Id.* at ¶7.  At that mediation, Plaintiffs informed PPF that it intended to bring WM into the Arbitration. *Id.*

The mediation was unsuccessful. *Id.* At the time of the first mediation, *Morris v. Ernst & Young* held that class waivers were unenforceable in the Ninth Circuit, and following the mediation, the Supreme Court reversed *Morris* and held that class waivers are in fact enforceable. The settlement negotiations between Named Plaintiffs and PPF continued for some

---

[2] Declaration of Ryan L. Hicks Supporting Motion for Preliminary Approval ("Hicks Dec.") at ¶¶4-5.

time following the unsuccessful mediation, and when those parties reached an impasse, they agreed upon a new Arbitrator, Hon. Robert Freedman (Ret.) of JAMS, and commenced the Arbitration. *Id.* at ¶8. Discovery was then commenced in the arbitration, in addition to the substantial informal discovery that occurred prior to the first mediation, which included information regarding the dates worked and hourly rates paid to the CMs, purported severance agreements, purported on duty meal period agreements ("ODMPAs"), purported arbitration agreements in three formats (some of which contained a class action waiver), and actual timekeeping data and payroll documents and wage statements for an audit sample of employees to confirm the other classwide data provided.

During July 2018 and continuing into 2019, Defendants engaged in an "individual settlement program" specifically to settle the claims at issue in this action. *Id.* at ¶10. As a result of Defendants' campaign, PPF obtained 194 releases from CMs for which $315,400 was paid to CMs. *Id.*; Exhibit 2.[3] Plaintiffs disputed the validity of the Individual Releases obtained through the individual settlement program and had the Settlement Agreement not been reached at mediation (as discussed below), intended to file a Motion to Invalidate the Releases in the near term in the Arbitration. *Id.* at ¶10.

On September 6, 2018, Plaintiffs filed their Statement of Claims in the Arbitration and named as Respondents Defendant PPF, and for the first time the WM entities. *Id.* at ¶11. On September 26, 2018, Western Milling and Kruse submitted an "Objection and Opposition" to being named as Respondents in the Arbitration, arguing that no agreement to arbitrate existed between WM and Plaintiffs, and that WM was not the joint employer or alter ego of PPF. *Id.* The Parties then reached an agreement that Plaintiffs would not proceed against WM in the Arbitration and instead would proceed by way of a separate court action. *Id.* Thereafter, on October 25, 2018, Plaintiffs then brought this parallel action against WM asserting the same claims except for the PAGA claim. (ECF No. 1).[4]

---

[3] The 194 Exhibits are attached to the Hicks Declaration as Exhibit 2, though the files are broken into separate approximately 150-page sections so that they could be submitted on the Court's E-filing system.

[4] The parallel actions were necessary to prosecute the interest of all affected CMs, because not all of the CMs had signed arbitration agreements with any entity, a different number of CMs signed arbitration agreements

NOTICE AND MOTION FOR PRELIMINARY APPROVAL                                              3

On December 6, 2018, WM filed a motion to dismiss this Action. As of January 29, 2019, that motion was fully briefed, and the parties in this action and the Arbitration agreed to stay all proceedings and attempt another mediation to reach a global resolution of both matters. *Id.* at ¶12. The Parties agreed to mediate the case with the assistance of mediator Paul Grossman, Esq. of Paul Hastings. *Id.*  In preparation for the mediation, PPF and Plaintiffs agreed to a *Belaire West* notice process, and to update the data and information exchanged prior to the first mediation. *Id.*

Throughout the pendency of the Arbitration and the Federal Action (collectively the "Actions"), the Parties engaged in an extensive pre-certification, voluntary exchange of information, including but not limited to PPF and Plaintiffs exchanging documents and voluminous personnel and payroll data, as described herein. *Id.* at ¶13. The Parties additionally each conducted independent investigations and fact-finding. *Id.*

On May 16, 2019, the parties participated in a mediation before Mr. Grossman, a highly-respected neutral mediator in Los Angeles, California, who specializes in wage and hour mediations. With Mediator Grossman's assistance, the Parties agreed, subject to approval by the Federal Court, to a Settlement of the Actions. *Id.* at ¶19. After the Court indicated during a teleconference with counsel that it was required to conduct the notice and approval process of the Settlement (ECF No. 26 is the minutes of that teleconference), the parties stipulated to the filing of the Amended Complaint in this action, which brought all of the claims against all of the parties before this Court for the purposes of approval of the Settlement Agreement. (ECF No. 29).

The September 19, 2019  operative Amended Complaint asserts six causes of action under the California Labor Code, applicable Industrial Welfare Commission ("IWC") Wage Orders, and Business and Professions Code §§ 17200, *et seq.* ("UCL"). Plaintiffs alleges class and collective violations on behalf of themselves and the Class for: (1) failure to provide meal periods; (2) failure to provide rest periods; (3) failure to provide accurate wage statements; (4)

---

that did not contain a class waiver, and other arbitration agreements explicitly state that the California Arbitration Act, and not the Federal Arbitration Act applied. *Id.* at ¶11.

waiting time penalties; (5) violation of the UCL for unlawful, unfair, and/or fraudulent business acts or practices; and (6) penalties pursuant to the California Private Attorney General Act ("PAGA"). (ECF No. 29).  Plaintiff Villarreal also asserts an individual claim for FMLA Interference.

### B.  Discovery

As a condition of the first mediation, Plaintiffs required Defendants to provide a dataset sufficient to prepare a full exposure analysis (along with the audit sample information and documents described above), and the other documents and information described above. Hicks Dec. at ¶6. Plaintiffs' counsel then calculated the damages for each individual CM. *Id.* at ¶¶6; 13-16. Class Counsel also made a thorough study of the legal principles applicable to the claims asserted against Defendants. *Id.* Then all of the information was updated prior to the second mediation, and Plaintiffs' counsel interviewed a number of CMs after receiving the contact information following the *Belaire* notice process. *Id.* at ¶13.

### C.  Damages Analysis

Class Counsel based their damages analysis and settlement negotiations on the informal discovery and data provided for all 234 CMs. *Id.* at ¶14. Because of the data production, and the straightforward policies of Defendants, Plaintiffs' Counsel was required to make only a few assumptions regarding the exposure. *Id.*

Using these averages and assumptions and further assuming that Plaintiffs and the CMs would certify all of their claims and prevail at trial, Plaintiffs' Counsel calculated total damages, including all penalties, to be $4,934,234.97 (including $2,258,750.00 in PAGA penalties for duplicative wage statement violations under Cal. Labor Code § 226.3). *Id.* at ¶15. The total amount of damages is further broken down as follows: meal periods ($1,083,152,43); rest periods ($1,083,152.43); wage statement penalties ($213,750.00); and waiting time penalties ($295,430.10). *Id.*

The net amount being disbursed to CMs is $347,334.33, which is approximately 13% of the total non-PAGA damages and penalties estimated by Plaintiffs, and over 7% of the total damages including the duplicative 226.3 penalties. *Id.* at ¶17. The settlement amount is fair, reasonable, and adequate. *Id.* at ¶20. The settlement amount takes into account the substantial

risks inherent in any wage-and-hour class action, the status of the litigation, the evidence that Defendants provided at the mediation, and the specific defenses asserted by Defendants. *Id.*

### D.   Mediation

The Parties first mediated this dispute on January 9, 2018 before Lynn Frank of the mediation firm Frank & Feder, a respected and experienced wage and hour mediator, but that mediation was unsuccessful. *Id.* at ¶¶5-7. The Parties then again engaged in arm's-length negotiations at the second mediation before Mr. Hastings, culminated by the execution of a memorandum of understanding which set forth settlement terms resolving the matter. *Id.* at ¶18. After the mediation, counsel for the Parties worked to finalize the settlement for the CMs and corresponding notice documents, subject to the Court's approval (which itself required further discussions between the parties as the original agreement contemplated the Arbitrator conducting the notice and approval process). *Id.* The Settlement Agreement was fully-executed on November 7, 2019. *Id.*

### IV. TERMS OF THE SETTLEMENT

### A.   Basic Terms

Defendants have agreed to pay a total of $650,000.00 to settle all aspects of the case. Settlement Agreement at §B(41)("Settlement Fund"). The "Net Settlement Fund," which is the amount available to pay settlement awards to the CMs, is defined as the Settlement Fund less: any attorneys' fees and costs awarded to Class Counsel (fees of up to one-third of the Gross Settlement Amount, $216,666.67, plus costs currently estimated at $17,000, any enhancement payments awarded to the Class Representatives (up to $10,000 for Benitez and Morales, and $20,000), the payment made to the California Labor & Workforce Development Agency ("LWDA") pursuant to PAGA ($22,500.00)[5], and the Settlement Administrator's fees and costs (which have been quoted at $6,900[6]). *Id.*

---

[5] Plaintiffs will submit a copy of the Settlement Agreement and these moving papers through the LWDA's online submission system concurrently with these papers, per Cal. Lab. Code §2699(l)(2). Hicks Dec. at ¶23, fn. 1. The Parties also agree to allocate $30,000.00 of the Gross Settlement Fund to the settlement of the PAGA claims, which the Parties believe in good faith is a fair and reasonable apportionment. *Id.* The Settlement Administrator shall pay 75%, or $22,500, of this amount to the LWDA, and allocate 25%, or $7,500.00, of this amount to the Net Settlement Fund. Settlement Agreement at §B(41).

[6] The Settlement Administrator's quote is $6,900. Hicks Dec. at ¶23.

**B.**   <u>**Class Definition**</u>

An individual is a member of the proposed settlement Class if he or she works or worked in any non-exempt position at the PPF facilities and/or warehouse in Visalia, CA, at any time during the period from November 2, 2012 through the date of preliminary approval of the Settlement. Settlement Agreement at §§ B(6) (Class Definition); B(11) (Class Period).

**C.**   <u>**Allocation and Awards**</u>

The Net Settlement Fund to be paid to CMs (beyond the $315,400 already paid to CMs as a direct result of this litigation which are included in the Settlement Fund) is estimated to be $31,934.33. Hicks Dec. at ¶25. In addition to the payments already received by CMs as a direct result of this litigation, all CMs who do not opt-out of the Settlement will receive a payment. *Id.* Each CM's settlement share will be determined based on the total number of weeks that the respective Class member worked at a PPF facility in Visalia, CA from November 2, 2012 through the date of preliminary approval of this Settlement Agreement as compared to the total weeks worked by all CMs (with any prior payments made as part of the challenged individual settlement program taken into account).[7] Settlement Payments will be paid to Class members by the Settlement Administrator 25 calendar days after the Court grants Final Approval of the settlement.[8] All eligibility and Class Settlement Award determinations shall be based on employee workweek information that Defendants will provide to the Settlement Administrator. *Id.* at §§D(1)(e). Class members will have the opportunity should they disagree with Defendants' records, to provide documentation and/or an explanation to show a contrary number of weeks worked. *Id.* at §E(1)(e). (*See* proposed Notice, Exhibit 1 to the Settlement Agreement). For any Class member that does not timely opt out of the Settlement and receives a payment, but does not timely cash his or her settlement check within 90 days after its issuance by the Settlement Administrator, the Settlement Administrator will immediately stop payment on the check and such funds will be transmitted by the Settlement Administrator the *cy pres* beneficiary designated by

---

[7] For example, if a CM received more from their Individual Release payment than they would under the pro rata calculation, they will not receive a further payment from the settlement. Settlement Agreement at §§ B(43)(Settlement Payment); B(25) (Individual Release); D(1)(Distribution; E(1)((e-f)(allocation accounting for prior individual settlement payments).

[8] Assuming no objectors. Settlement Agreement at §B(44)(Settlement Proceeds Distribution Deadline); §E(5).

the Court; the Parties have agreed to propose Valley Children's Hospital as the *cy pres* beneficiary of this Settlement.[9] *Id.*

### D.    Scope of Release and Final Judgment

The release contemplated by the proposed Settlement will release all claims in connection with the lawsuit, all violations asserted in any notice sent to the LWDA, as well as the same or any similar claims that could have been alleged based on the facts alleged in the complaint (i.e. based on meal/rest period violations), from the beginning of any applicable statute of limitations period through the date of preliminary approval of this Settlement. Settlement Agreement at §§B(36)("Released Claims"); 5(a-c) ¶26. Only Class Members who do not opt out will release their Claims. *Id.*

### E.    Settlement Administration

The Parties have agreed to use Simpluris Group, Inc. ("Simpluris") to administer the Settlement, for total fees and costs it has provided a quote of $6,900.00 to administer this settlement. Hicks Dec. at ¶27. Simpluris will distribute the Notice Package, calculate individual settlement payments, calculate all applicable payroll taxes, withholdings and deductions, preparing and issuing all disbursements to be paid to Class members, the Class Representative, Class Counsel, the LWDA, any applicable local, state, and federal tax authorities, and handling inquiries and/or disputes from CMs. *Id.* Simpluris is also responsible for the timely preparation and filing of all tax returns, and making the timely and accurate payment of any and all necessary taxes and withholdings. Settlement Agreement at §§D(3)(a-c). The Notice Package and relevant documents will be available for CMs to download at Class Counsel's website, as noted in the Notice package.

///

///

///

---

[9] Settlement Agreement at §E(5)(b). Valley Children's Hospital has been approved as a *cy pres* beneficiary many by local Courts including this Court. *See, e.g. Aguilar v. Wawona Frozen Foods,* E.D.Cal. Case No. 1:15-cv-00093-DAD-EPG (May 19, 2017); *Larios v. Degroot,* Tulare County Superior Court Case No. VCU268826 (June 21, 2018; Judge Mathias); *Soto v. Vander Tuig Dairy,* Tulare County Superior Court Case No. VCU269900 (June 21, 2018; Judge Mathias)

1

## V. ARGUMENT

**A.**     **The Court Should Grant Preliminary Approval of the Settlement as to the California Class under Rule 23.**

"Courts have long recognized that settlement class actions present unique due process concerns for absent class members." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citation and internal quotations omitted). To protect the rights of absent class members, Rule 23(e) of the Federal Rules of Civil Procedure requires that the court approve all class action settlements "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *In re Bluetooth*, 654 F.3d at 946.

Review of a proposed class action settlement ordinarily involves two hearings. *See* Manual for Complex Litig. (4th) § 21.632. First, the court conducts a preliminary fairness evaluation. If the court makes a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms, the parties are directed to prepare the notice of proposed settlement to the class members. *Id.* (noting that if the parties move for both class certification and preliminary approval, the certification hearing and preliminary fairness evaluation can usually be combined). Second, the court holds a final fairness hearing to determine whether to approve the settlement. *Id.*; *see also Narouz v. Charter Commc'ns, Inc.*, 591 F.3d 1261, 1266–67 (9th Cir. 2010). The decision to approve or reject a proposed settlement is committed to the sound discretion of the court. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). Rule 23 requires that all class action settlements satisfy two primary prerequisites before a court may grant certification for purposes of preliminary approval: (1) that the settlement class meets the requirements for class certification if it has not yet been certified (Fed. R. Civ. P. 23(a),(b); *Hanlon*, 150 F.3d at 1020); and (2) that the settlement is fair, reasonable, and adequate (Fed. R. Civ. P. 23(e)(2)).

Though Rule 23 does not explicitly provide for such a procedure, federal courts generally find preliminary approval of settlement and notice to the proposed class appropriate if the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class

representatives or segments of the class, and falls within the range of possible approval." *Lounibos v. Keypoint Gov't Sols. Inc.*, No. 12-cv-00636-JST, 2014 WL 558675, at *5 (N.D. Cal. Feb. 10, 2014) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)); *see also* NEWBERG ON CLASS ACTIONS § 13:13 (5th ed. 2011); *Dearaujo v. Regis Corp.*, Nos. 2:14-cv-01408-KJM-AC, 2:14-cv-01411-KJM-AC, 2016 WL 3549473 (E.D. Cal. June 30, 2016) ("Rule 23 provides no guidance, and actually foresees no procedure, but federal courts have generally adopted [the process of preliminarily certifying a settlement class]."). While it is not a court's province to "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute," a court should weigh, among other factors, the strength of a plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the extent of discovery completed; and the value of the settlement offer. *Chem. Bank v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992); *see also Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).

This class action settlement satisfies the requirements of Rule 23(a) and (b), and it is fair, reasonable, and adequate in accordance with Rule 23(e)(2). Hicks Dec. at ¶28. Accordingly, the Court should preliminarily approve the settlement as to the Class.[10]

## B. The Court Should Conditionally Certify the Class.

A class may be certified under Rule 23 if (1) the class is so numerous that joinder of all members individually is "impracticable"; (2) questions of law or fact are common to the class; (3) the claims or defenses of the class representative are typical of the claims or defenses of the class; and (4) the person representing the class is able to fairly and adequately protect the interests of all members of the class. Fed R. Civ. P. 23(a). Furthermore, Rule 23(b)(3) provides that a class action seeking monetary relief may only be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting

---

[10] Plaintiffs acknowledge that while this Motion is unopposed because the Parties agree to certification for settlement purposes, in the event that the Settlement Agreement is not approved by the Court, class and collective certification would be contested by Defendants, and that Defendant fully reserves and does not waive its arguments and challenges regarding the propriety of class and collective action certification. Similarly, Plaintiffs would immediately challenge the Individual Releases and seek to have them voided and a curative notice issued.

only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The proposed Settlement Class meets all of these requirements.

### 1.   The Class is Numerous and has Been Ascertained.

The numerosity prerequisite demands that a class be large enough that joinder of all members would be impracticable. Fed. R. Civ. P. 23(a)(1). The numerosity requirement demands "examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980). Courts have found the requirement satisfied when the class comprises of as few as thirty-nine members, or where joining all class members would serve only to impose financial burdens and clog the court's docket. *See Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 474 (E.D. Cal. 2010) (citing *Jordan v. L.A. County*, 669 F.2d 1311, 1319 (9th Cir.), *vacated on other grounds*, 459 U.S. 810 (1982)) (discussing Ninth Circuit thresholds for numerosity); *In re Itel Secs. Litig.*, 89 F.R.D. 104, 112 (N.D. Cal. 1981). The 234 members of the Class make the class so large as to make joinder impracticable. Hicks Dec. at ¶29.

### 2.   Plaintiffs' Claims Raise Common Issues of Fact or Law.

To satisfy the commonality requirement, the class representatives must demonstrate that common points of facts and law will drive or resolve the litigation. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.") (internal citations omitted). "Commonality is generally satisfied where . . . 'the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.'" *Franco v. Ruiz Food Prods., Inc.*, No. CV 10-02354 SKO, 2012 WL 5941801, at *5 (E.D. Cal. Nov. 27, 2012) (quoting *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005)). The rule does not require all questions of law or fact to be common to every single class member. *See Hanlon*, 150 F.3d at 1019 (noting that commonality can be found through "[t]he existence of shared legal issues with divergent factual predicates"). Rule 23(a)(2)

has been construed permissively. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998). Plaintiffs "need not show that every question in the case, or even a preponderance of questions, is capable of classwide resolution . . . a single common question" satisfies commonality. *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538 (9th Cir. 2013). Common questions of law and fact predominate thereby satisfying paragraphs (a)(2) and (b)(3) of Rule 23, as alleged in the operative complaint. Hicks Dec. at ¶30. Defendants had uniform rest and meal period practices and policies applicable to all non-exempt hourly employees at the Visalia facilities during the applicable period. *Id.* Plaintiffs' other derivative claims will rise or fall with the primary claims. *Id.* Because these questions can be resolved at the same juncture, Plaintiffs contend the commonality requirement is satisfied for the Class. *Id.*

### 3.   Plaintiffs' Claims are Typical of the Claims of the Class.

"Rule 23(a)(3) requires that the claims of the named parties be typical of the claims of the members of the class." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 468 (E.D. Pa. 2000). "Under the rule's permissive standards, a representative's claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Here, Plaintiffs' claims are typical of those of all other hourly employees, as they were subject to the same practices regarding meal and rest periods as everyone else. Hicks Dec. at ¶31. They were subject to the alleged illegal policies and practices that form the basis of the claims asserted in this case. *Id.* Interviews with Class members and review of timekeeping and payroll data confirm that the CMs were apparently subjected to the same alleged illegal policies and practices to which Plaintiffs were subjected. *Id.* Thus, this requirement is also satisfied. *Id.*

### 4.   Plaintiffs and Class Counsel will Adequately Represent the Class.

To meet the adequacy of representation requirement in Fed R. Civ. P. 23(a)(4), Plaintiffs must show "(1) that the putative named Plaintiffs have the ability and the incentive to represent the claims of the class vigorously; (2) that they have obtained adequate counsel, and (3) that there is no conflict between the individuals' claims and those asserted on behalf of the class." *Fry*, 198 F.R.D. at 469. Plaintiffs' claims are not antagonistic to the claims of members of the

Class. Hicks Dec. at ¶32. Plaintiffs' claims are in line with the claims of the class. *Id.* Plaintiffs have prosecuted this case with the interests of the CMs in mind. *Id.* Moreover, Class Counsel has extensive experience in class action and employment litigation, including wage and hour class actions, and do not have any conflict with the class. *Id.*

### 5. The Rule 23(b)(3) Requirements for Class Certification are Met.

Under Rule 23(b)(3), Plaintiffs must demonstrate that common questions "predominate over any questions affecting only individual members" and that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." "The predominance analysis under Rule 23(b)(3) focuses on 'the relationship between the common and individual issues' in the case and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Wang,* 737 F.3d at 545 (9th Cir. 2013). Class actions in which a defendant's uniform policies are challenged generally satisfy the predominance requirement of Rule 23(b)(3). *See Palacios v. Penny Newman Grain, Inc.*, 2015 WL 4078135, at *5–6 (E.D.Cal. July 6, 2015); *see also Clesceri v. Beach City Investigations & Protective Services, Inc.*, 2011 WL 320998, at *7 (E.D.Cal. Jan. 27, 2012). The predominance requirement has therefore been met in this case.

Here, Plaintiffs contend the common questions raised in this action predominate over any individualized questions concerning the Class. Hicks Dec. at ¶33. The Class is entirely cohesive because resolution of Plaintiffs' claims hinge on the uniform policies and practices of Defendants, rather than any treatment the Class members experienced on an individual level. *Id.* As a result, the resolution of these alleged class claims will be resolved through the use of common forms of proof, such as Defendants' uniform policies and payroll records, and will not require inquiries specific to individual class members. *Id.*

Further, Plaintiffs contend that the class action mechanism is a superior method of adjudication compared to a multitude of individual suits. Hicks Dec. at ¶34. In resolving the Rule 23(b)(3) superiority inquiry, "the court should consider class members' interests in pursuing separate actions individually, any litigation already in progress involving the same controversy, the desirability of concentrating in one forum, and potential difficulties in managing the class

action—although the last two considerations are not relevant in the settlement context." *See Palacios*, 2015 WL 4078135, at *6 (citing *Schiller v. David's Bridal Inc.*, No. 10-0616, 2012 WL 2117001, at *10 (E.D. Cal. June 11, 2012)). Here, the CMs do not have a strong interest in controlling their individual claims. Hicks Dec. at ¶34. If the Class members proceeded on these claims as individuals, their many individual suits would require duplicative discovery in potentially hundreds of individual arbitrations and lawsuits (depending on whether the PCM signed an arbitration agreement, and which arbitration agreement as a few dozen PCMs signed arbitration agreements containing class waivers, while the rest did not), including the parallel PAGA action and duplicative litigation. *Id.* In contrast, the class action mechanism would efficiently resolve numerous substantially identical claims at the same time while avoiding a waste of judicial resources and eliminating the possibility of conflicting decisions from repetitious litigation and arbitration. *Id.* Manageability is not a concern in the settlement context, *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 593 (1997). Accordingly, class treatment is superior.

> **C.** **The Settlement Should Be Preliminarily Approved as to the Class Because It Is Fair, Reasonable, and Adequate.**

In deciding whether to approve a proposed class action settlement, the Court must find that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Bluetooth*, 654 F.3d at 946. "[P]reliminary approval of a settlement has both a procedural and substantive component." *See, e.g.*, *In re Tableware Antitrust Litigation*, 484 F. Supp. 2d at 1079 (citing *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 570 n.12 (E.D. Pa. 2001)). In particular, preliminary approval of a settlement and notice to the proposed class is appropriate if: (i) the proposed settlement appears to be the product of serious, informed, non-collusive negotiations; and (ii) the settlement falls within the range of possible approval, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives or segments of the class. *Id.*; *see also Ross v. Bar None Enters., Inc.*, No. 2:13–cv–00234–KJM–KJN, 2014 WL 4109592, at *9 (E.D. Cal. Aug. 19, 2014). Importantly, courts apply a presumption of fairness "if the settlement is recommended by class counsel after arm's-

length bargaining." *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011).

### 1.   Procedural Fairness.

A settlement is presumed fair if it "follow[s] sufficient discovery and genuine arms-length negotiation." *Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)). There is also "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). In light of these factors, the proposed settlement is fair, reasonable, and adequate.

As noted above, in May 2019, the parties attended mediation with Paul Grossman, who specializes in resolving wage and hour class action matters. (Hicks Dec. at ¶18.) During both mediations, the parties engaged in good-faith, non-collusive negotiations. (*Id.* at ¶¶5, 18.) The parties exchanged additional information regarding defendant's realistic exposure to damages, the relative strengths and weaknesses of Plaintiffs' claims, the risks and delays of further litigation, the current state of the law as it related to Plaintiffs' claims, and the difficulty Plaintiffs may have in obtaining and maintaining class certification on each of their claims in the arbitration and the federal action. (*Id.* ¶18.) Moreover, Plaintiffs' counsel conducted a thorough investigation into the merits of the claims, including: reviewing Plaintiffs' employment records; exchanging thousands of pages of documents, including a full list of every CM, with contact information, employee handbooks and policies applicable to the class members, and time records and pay records for the class period; and conducting detailed phone interviews with a substantial number of the class members. (*Id.* at ¶¶6-18; 35.) The parties' negotiation constituted genuine, informed, arm's length bargaining.

### 2.   Substantive Fairness.

In evaluating the fairness of a proposed settlement, courts compare the settlement amount with the estimated maximum damages recoverable in a successful litigation. *In re Mego Fin. Corp. Sec. Litig.,*213 F.3d 454, 459 (9th Cir.2000). Courts routinely approve settlements that provide a fraction of the maximum potential recovery. *See, e.g., Officers for Justice v. Civil Serv.*

*Comm'n of San Francisco*, 688 F.2d 615, 623 (9th Cir. 1982).[11] "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). To determine whether a settlement "falls within the range of possible approval" a court must focus on "substantive fairness and adequacy," and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).

A review of the Settlement Agreement reveals the fairness, reasonableness, and adequacy of its terms. Hicks Dec. at ¶36. The Net Settlement Fund of $31,934.33, plus the amount paid to 194 of the 234 CMs in the disputed Individual Releases ($315,400) brings the total amount being paid to CMs as a result of Plaintiffs' claims to $359,334.33 derived from a Gross Settlement Amount of $650,000.00, and will result in fair and just relief to CMs. *Id.* Payments to the Class members are roughly 13% of the total non-PAGA damages, penalties and interest attainable in this case, and roughly 7% of the total damages including the duplicative PAGA penalties. *Id.* The result is well within the reasonable standard when considering the difficulty and risks presented by pursuing further litigation. *Id.* Furthermore, the final settlement amount takes into account the substantial risks inherent in any class action wage-and hour case, as well as the specific defenses asserted by Defendants, including the disputed Individual Releases signed by the majority of the CMs, arbitration agreements containing class waivers, purported ODMPAs, and the difficulty of pursuing the claims in a parallel arbitration and federal class action with overlapping classes and collective. *Id.; See Officers for Justice*, 688 F.2d at 623.

///

///

///

---

[11] *In Re Sunrise Secs. Litig.*, 131 F.R.D. 450, 457 (E.D. Pa. 1990) (approving 20% of damages); *In Re Armored Car Antitrust Litig.*, 472 F.Supp. 1357, 1373 (N.D. Ga.1979) (settlements with a value of 1% to 8% of the estimated total damages were approved); *Entin v. Barg*, 412 F.Supp. 508, 514 (E.D. Pa. 1976) (approving 17% of damages); *In Re Four Seasons Secs. Laws Litig.*, 58 F.R.D. 19, 37 (W.D. Okla.1972) (approving 8% of damages).

**3.      The Parties have Agreed to Distribute Settlement Proceeds Tailored to the Class and Their Respective Claims.**

In an effort to further ensure fairness for the employees, the Parties have agreed to allocate the settlement proceeds (accounting for the Individual Releases which have already provided payments to 194 CMs) amongst CMs on a *pro rata* basis so that CMs who worked more during the Class Period receive a proportion of the Net Settlement Fund that corresponds to the time that they worked compared to the other CMs. Hicks Dec. at ¶37. The allocation was made based on Class Counsel's assessment of the risk of continued litigation and risk on certification and merits. *Id.*

A class action settlement need not benefit all class members equally. *Holmes v. Continental Can Co.,* 706 F.2d 1144, 1148 (11th Cir.1983); *In re AT & T Mobility Wireless Data Services Sales Tax Litigation,* 789 F.Supp.2d 935, 979–80, 2011 WL 2204584 at *42 (N.D.Ill.2011). Rather, although disparities in the treatment of class and collective members may raise an inference of unfairness and/or inadequate representation, this inference can be rebutted by showing that the unequal allocations are based on legitimate considerations. *Holmes,* 706 F.2d at 1148; *In re AT & T,* 789 F.Supp.2d at 979–80. Here, the only consideration is the length of an individual CM's employment during the Class Period.

**4.      The Sufficient Informal Discovery Exchange Between the Parties Enabled Them to Make Informed Decisions Regarding Settlement.**

The amount of discovery completed prior to reaching a settlement is important because it bears on whether the Parties and the Court have sufficient information before them to assess the merits of the claims. *See, e.g.*, *Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008); *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 617 (N.D. Cal. 1979). Informal discovery is a strong factor in favor of settlement approval so long as the Parties had an opportunity to "form a clear view of the strengths and weaknesses of their cases." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013).

The Parties engaged in an informal information exchange and discovery to enable both sides to assess the claims and potential defenses in this action. (Hicks Dec. at 6-18, 35, 39.) The

NOTICE AND MOTION FOR PRELIMINARY APPROVAL                                    17

Parties were able to accurately assess the legal and factual issues that would arise if the case proceeded to trial. Hicks Dec. at ¶39. In addition, in reaching this settlement, Class Counsel relied on their substantial litigation experience in similar wage and hour class and collective actions. Hicks Dec. at ¶¶2-4, 39. Class Counsel's liability and damages evaluation was premised on a careful and extensive analysis of the effects of Defendants' meal and rest period policies and practices, and a review the relevant documents and data, including actual timekeeping data and payroll records. Hicks Dec. at ¶¶6-18, 39. Ultimately, facilitated by mediator Grossman, the Parties used this information and discovery to fairly resolve the litigation. Hicks Dec. at ¶¶ 18, 38.

## 5. Litigating and Arbitrating These Claims in a Parallel Manner Not Only Would Delay Recovery, But Would Be Expensive, Time Consuming, and Involve Substantial Risk and Duplication.

The total monetary value of the proposed Settlement represents a fair compromise given the litigation risks and uncertainties posed by continued litigation. Hicks Dec. at ¶39. If this case were to go to trial as a class action in this action and to the evidentiary hearing in the related arbitration (which Defendants would vigorously oppose if this Settlement Agreement were not approved), Class Counsel estimates that fees and costs would exceed $1,500,000.00. *Id.* Litigating and arbitrating the related and overlapping class and collective claims would require substantial additional preparation and discovery and coordination between the litigation and the arbitration. *Id.* It would require depositions of experts, the presentation of percipient and expert witnesses at trial, as well as the consideration, preparation, and presentation of voluminous documentary evidence and the preparation and analysis of expert reports. *Id.* Recovery of the damages and penalties previously referenced would also require complete success and certification of all of Plaintiffs' claims in both the litigation and the arbitration, a questionable feat in light of recent developments in wage and hour and class and collective action law as well as the legal and factual grounds that Defendants has asserted to defend this action. *Id.* Furthermore, presumably the claims originally filed in this action would remain stayed during the pendency of the arbitration, or they would proceed concurrently with the arbitration which could certainly lead to inconsistent rulings in discovery, as to certification, and on the merits for the overlapping

classes and collective. In contrast, resolving this case by means of a global settlement will yield a prompt, certain, and substantial recovery for the CMs and no challenge to the disputed individual releases. *Id.* Such a result will benefit the Parties and the court system. *Id.*

### 6.   The Class Representative Enhancement Payments are Reasonable.

Named Plaintiffs in class action litigation are eligible for reasonable service awards. *See Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).[12] The enhancement payments of $10,000 for Plaintiffs Benitez and Morales and $20,000 to Plaintiff VIllarreal[13] are intended "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009).

Here, Plaintiffs have requested incentive payments of $10,000 and $20,000, respectively. This would represent approximately 1.5 and 3 percent of the overall settlement. The average payment a member of the Class will receive is $1,484.33, although the actual amount recoverable by a particular class member will depend on the number of weeks that class member worked and whether they already received a payment via an Individual Release. Settlement Agreement at §D(1)(d-h).

Courts in this circuit have previously approved incentive awards in this range, and the court finds that the award is "not outside the realm of what has been approved as reasonable by other courts." *Aguilar v. Wawona Frozen Foods*, No. 1:15-cv-00093-DAD-EPG, 2017 WL 2214936, at *8 (E.D. Cal. May 19, 2017) (approving an incentive award of $7,500 to each class

---

[12] "Courts routinely approve incentive awards to compensate named Plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (named Plaintiff received $50,000 for work in class action); *Castellanos v. The Pepsi Bottling Group*, No. RG07332684 (Alameda Super Ct., Mar. 11, 2010) (approving award of $12,500); *Novak v. Retail Brand Alliance, Inc.*, No. RG 05-223254 (Alameda Super. Ct., Sept. 22, 2009) (approving award of $12,500); *Hasty v. Elec. Arts, Inc.*, No. CIV 444821 (San Mateo Super. Ct., Sept. 22, 2006) (approving award of $30,000); *Meewes v. ICI Dulux Paints*, No. BC265880 (Los Angeles Super. Ct. Sept. 19, 2003) (approving service awards of $50,000, $25,000 and $10,000 to the named Plaintiffs); *Mousai v. E-Loan, Inc.*, No. C 06-01993 SI (N.D. Cal. May 30, 2007) (approving service award of $20,000).

[13] The extra $10,000 in the Villarreal award is to settle his individual FMLA claim. Settlement Agreement at §B(13).

representative where average class recovery was approximately $500); *see also Davis v. Brown Shoe Co., Inc.*, No. 1:13-cv-01211-LJO-BAM, 2015 WL 6697929, at *12 (E.D. Cal. Nov. 3, 2015) (approving $7,000 incentive award where average class recovery was approximately $400). Moreover, in this case Plaintiffs estimate that they have each spent dozens of hours performing work related to this case, and will submit declarations to the Court at the Final Approval stage testifying to the total amount each has spent on the case. Hicks Dec. at ¶41.

### 7.    The Requested Attorneys' Fees and Costs are Reasonable.

In their fee motion to be submitted with the final approval papers, Class Counsel will request up to thirty-three percent (33%) of the Gross Settlement Amount, $216,666.67) plus reimbursement of costs, which are currently estimated to be approximately $17,000. Hicks Dec. at ¶42. The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark. *Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482, 491-492 (E.D. Cal. 2010) (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)); *Hanlon*, 150 F.3d at 1029; *Staton*, 327 F.3d at 952. However, the exact percentage varies depending on the facts of the case, and in "most common fund cases, the award exceeds that benchmark." *Id.* (citing *Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. 2009); *In re Activision Sec. Litig.*, 723 F.Supp. 1373 (N.D. Cal. 1989) ("nearly all common fund awards range around 30%")). In California, federal and state courts have customarily approved payments of attorneys' fees amounting to one-third of the common fund in comparable wage and hour class actions. *See Regino Primitivo Gomez, et al. v. H&R Gunlund Ranches, Inc.*, No. CV F 10–1163 LJO MJS, 2011 WL 5884224 (E.D. Cal. 2011) (approving attorneys' fees award equal to 45% of the settlement fund).[14]

---

[14] *Wren v. RGIS Inventory Specialists,* WL 1230826, (N.D.Cal.,2011) (approving attorneys' fee award of just under 42% of common fund); *Big Lots Overtime Cases*, JCC Proceeding No. 4283 (San Bernardino Super. Ct., Feb. 4, 2004) (approving award of attorneys' fees of 33% of the recovery); *Barela v. Ralph's Grocery Co.,* No. BC070061 (Los Angeles Super. Ct., June 5, 1998) (same); *Davis v. The Money Store, Inc.*, No. 99AS01716, (Sacramento Super. Ct., Dec. 26, 2000) (same); *Ellmore v. Ditech Funding Corp.*, No. SAVC 01-0093 (C.D. Cal., Sept. 12, 2002) (same); *Miskell v. Auto. Club of S. Cal.* (Orange County Super. Ct., No. 01CC09035, May 27, 2003) (same); *Sconce/Lamb Cremation Cases*, JCC Proceeding No. 2085, (Los Angeles Super. Ct., Mar. 24, 1992) (same).

In this case, given the results achieved, the effort expended litigating and arbitrating these claims, and the difficulties attendant to litigating and arbitrating the case in the face of changing law, such an upward adjustment is warranted. Hicks Dec. at ¶42. There was no guarantee of compensation or reimbursement. *Id.* Rather, counsel undertook all the risks of this litigation on a completely contingent fee basis. *Id.* These risks were front and center. *Id.* Defendants' vigorous and skillful defense further confronted Class Counsel with the prospect of recovering nothing or close to nothing for their commitment to and investment in the case. *Id.*

Nevertheless, Plaintiffs and Class Counsel committed themselves to developing and pressing Plaintiffs' claims to enforce the employees' rights and maximize the class and collective recovery. *Id.* During the litigation, counsel had to turn away other less risky cases to remain sufficiently resourced for this one. *Id.* The challenges that Class Counsel had to confront and the risks they had to fully absorb on behalf of the class and collective here are precisely the reasons for multipliers in contingency fee cases. *See, e.g.*, *Noyes v. Kelly Servs., Inc.,* 2:02-CV-2685-GEB-CMK, 2008 WL 3154681 (E.D. Cal. Aug. 4, 2008); Posner, Economic Analysis of the Law, 534, 567 (4th ed. 1992) ("A contingent fee must be higher than a fee for the same legal services paid as they are performed… because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans").

Attorneys who litigate on a wholly or partially contingent basis expect to receive significantly higher effective hourly rates in cases where compensation is contingent on success, particularly in hard-fought cases where, like in the case at bar, the result is uncertain. This does not result in any windfall or undue bonus. In the legal marketplace, a lawyer who assumes a significant financial risk on behalf of a client rightfully expects that his or her compensation will be significantly greater than if no risk was involved (*i.e.,* if the client paid the bill on a monthly basis), and that the greater the risk, the greater the "enhancement." Adjusting court-awarded fees upward in contingent fee cases to reflect the risk of recovering no compensation whatsoever for hundreds of hours of labor simply makes those fee awards consistent with the legal marketplace, and in so doing, helps to ensure that meritorious cases will be brought to enforce important public

interest policies and that clients who have meritorious claims will be better able to obtain qualified counsel.

The requested attorneys' fees and expense award is also reasonable when compared to Class Counsel's lodestar amount. Hicks Dec. at ¶43. *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F. 3d 1043, 1050-51 (9th Cir. 2002)("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award"). Here, Class Counsel's current cumulative lodestar for the arbitration and litigation is approximately $200,000. Hicks Dec. at ¶43. This amount will increase for preparation of the final approval papers, preparation and attendance at any remaining hearings, correspondence and communications with CMs, and settlement administration and oversight. *Id.* Class Counsel's litigation costs to date total roughly $17,000.00. *Id.* Class Counsel also requests reimbursement for these expenses. *Id.* Class Counsel respectfully submits that a one-third recovery for fees is modest and appropriate and should be preliminarily approved as fair and reasonable. *Id.*

### 8.   <u>Release of Claims</u>

Finally, the release appropriately tracks the claims at issue in this case.[15] The settlement provides that all participating class members shall be deemed to have forever released and dismissed with prejudice all released claims as defined in the Agreement that could have been alleged based on the facts alleged in the Actions, and that accrued from November 2, 2012, through the Preliminary Approval Date.

---

[15] The proposed settlement defines "Released Claims" as: Any and all Claims, during the Class Period, that could have been made based on the facts pled in the Actions through the date of Preliminary Approval including, but not limited to, failure to provide meal periods (California Labor Code sections 226.7, 512; applicable Industrial Welfare Commission Wage Order); failure to authorize and permit rest periods (California Labor Code section 226.7; applicable Industrial Welfare Commission Wage Order); failure to provide accurate itemized wage statements (California Labor Code section 226; applicable Industrial Welfare Commission Wage Order); failure to timely pay final wages (California Labor Code sections 201, 202, 203; applicable Industrial Welfare Commission Wage Order); violations of California Business and Professions Code sections 17200, *et seq.*; violations of Industrial Welfare Commission Wage Orders; penalties under California Labor Code sections 2698, *et seq.*; and any other Claims that were alleged or could have been alleged under any state, municipal, or federal statute, ordinance, regulation, order, or common law based on the facts and Claims alleged in the Actions, including, but not limited to, claims under California Labor Code sections 90.5, 200, 201, 201.5, 202, 203, 204, 204b, 210, 218, 218.5, 218.6, 221, 222, 223, 226, 226.3, 226.4, 226.6, 226.2, 226.7, 510, 512, 550, 551, 552, 558, 558.1, 1174, 1174.5, 1175, 1194, 1194.2, 1194.3, 1197, 1197.1, 1198, and 2802, violations of California Business and Professions Code sections 17200, *et seq.,* California Labor Code sections 2698, *et seq.*, and California Code of Civil Procedure section 1021.5. (Settlement Agreement at §B(36)(a).

**D.**    **The Proposed Notices and Claims Process Are Reasonable.**

The Court must ensure that CMs receive the best notice practicable under the circumstances of the case. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974). Procedural due process does not guarantee any particular procedure but rather requires only notice reasonably calculated "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). A settlement notice "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Village LLC*, 361 F.3d at 575.

The Class Notice, attached as Exhibit 1 to the Settlement Agreement, and manner of distribution negotiated and agreed upon by the Parties is "the best notice practicable." Settlement Agreement at §E(1-4). Fed. R. Civ. P. 23(c)(2)(B). All CMs have been identified and the Notice Package will be mailed directly to each CM. *Id.* at §5(1)(f). In addition, the proposed Notice is clear and straightforward, and provides information on the meaning and nature of the Class definition, the class action, the terms and provisions of the Settlement Agreement, and the monetary awards that the Settlement will provide CMs. (Hicks Dec. at ¶¶45-48.)

The proposed Notice also fulfills the requirement of neutrality in class notices. *See* Conte, Newberg on Class Actions, § 8.39 (3rd Ed. 1992). It summarizes the proceedings necessary to provide context for the Settlement Agreement and summarize the terms and conditions of the settlement, including an explanation of how the settlement amount will be allocated between the named Plaintiffs, Class Counsel, the Settlement Administrator, and the CMs, in an informative, coherent and easy-to-understand manner, all in compliance with the Manual for Complex Litigation's recommendation that "the notice contain a clear, accurate description of the terms of the settlement." Ex. 1 to Settlement Agreement. Manual for Complex Litigation, *Settlement Notice*, § 21.312 (4th ed. 2004).

The Class Notice clearly explains the procedures and deadlines for requesting exclusion from the Settlement, objecting to the estimated award, the consequences of taking or foregoing

the various options available to CMs, and the date, time and place of the final settlement approval hearing. Pursuant to Rule 23(h), the proposed Class Notice also sets forth the amount of attorneys' fees sought by Plaintiffs, as well as an explanation of the procedure by which Class Counsel will apply for them. *See* Proposed Notice, Ex. 1 to Settlement Agreement. In addition, the Class Notice explains that Class members have the opportunity to object to Class Counsel's motion for attorneys' fees and costs. *Id.* It makes clear that the final settlement approval decision has yet to be made. *Id.* Accordingly, the Class Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. *See* Conte, Newberg on Class Actions, §§ 8.21 and 8.39 (3rd Ed. 1992); Manual for Complex Litigation, *Certification Notice,* § 21.311; *Settlement Notice,* § 21.312 (4th ed. 2004).

Furthermore, reasonable steps will be taken to ensure that all CMs receive the Notices. Before mailing, Defendants shall provide to Simpluris the last-known name, Social Security number, last-known address, the number of Weeks Worked during the Class Period, and  if the Class Member entered into an Individual Release with PPF, the amount received by that Class Member in exchange for the Individual Release. Settlement Agreement at §E(1). The Settlement Administrator shall use one or more commercially reasonable skip tracing methods to update the contact information in the Database. *Id.* at §E(1)(a-c). Within 10 calendar days of receipt of the Class List from Defendants, Simpluris will mail the Class Notice to each CM. *Id.* With respect to Class Notices returned as undeliverable, Simpluris will promptly attempt to obtain a valid mailing address by use of one or more skip trace databases such as the Equifax, National Change of Address ("NCOA") database search, and skip trace. *Id.* If another address is identified, Simpluris will send the Class Notice to the new address. *Id.* Class members who are re-mailed a notice will have 30 additional days to opt-out, object to the Settlement, or dispute the information shown on his or her Class Notice. *Id.* Any Class member who fails to submit a timely request to exclude themselves from the Settlement will be deemed a Class member whose rights and claims are determined by any order the Court enters granting final approval, and any judgment the Court ultimately enters in the case. *Id.* at §E(2).

Because the proposed Notice clearly and concisely describes the terms of the Settlement and the obligations of CMs who participate, and because the Notice will be disseminated in a way calculated to provide notice to as many CMs as possible, the Class Notice should be preliminarily approved.

### E.   The Court Should Approve the Proposed Schedule.

The Settlement Agreement contains the following proposed schedule, which Plaintiffs respectfully request this Court approve:

| | |
|---|---|
| Date of preliminary approval of the Settlement as to Class. | |
| Defendants to provide to Simpluris a database containing CMs' contact information. | 10 days after entry of order granting preliminary approval of the Settlement. |
| Simpluris to Mail the Notices. | 10 days after receipt of Class List from Defendants. |
| Deadline to postmark requests to opt-out, objections to Settlement, or dispute the information shown in Class Notice pursuant to the instructions set forth in the Class Notice. | 60 days after Class Notice is mailed. |
| Simpluris provides all counsel with report listing estimated Settlement Payment to be made to each CM, and any Opt-Outs or exclusions received. | 10 days after close of Opt-Out Period. |
| Class Counsel to file Simpluris's verification that the Class Notice has been completed. | On or before the date of the Final Approval Hearing. |
| Final Approval Hearing | No earlier than 100 days after preliminary approval is granted. |
| Effective Date | (a) if no objections to the settlement are filed, then the Effective Date shall be the date of final court approval; or (b) if objections to the settlement are filed, the date of final court approval of the Settlement **and** the expiration of the time to file appeals or the resolution of any appeals filed. |
| SImpluris to provide to PPF calculation of Net Settlement Fund and employer's | 5 calendar days after Effective Date |

| | |
|---|---|
| share of payroll taxes ("Settlement Calculation"). | |
| Simpluris to Mail Notice of Final Approval to CMs | 10 calendar days after Effective Date |
| Defendants to wire the Settlement Fund Deposit Amount in Simpluris' QSF. | 10 Calendar days after Settlement Calculation or 10 calendar days after Effective Date, whichever is later. |
| Fees and costs, Class Representative awards, Class awards, LWDA payment to be paid by Simpluris | No later than 10 calendar days after Defendants deposit Settlement Fund Deposit Amount into QSF. |
| Simpluris to stop payment on checks for CMs that do not timely opt-out and so receive a payment, but do not cash settlement check and transmit funds to the court-approved *cy pres* benificary | 90 days after issuance of awards |

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant preliminary approval of the Settlement Agreement in accordance with the schedule set forth herein.

Respectfully submitted,

Date:  November 8, 2019

HOYER & HICKS

/s/ Ryan L. Hicks
Richard A. Hoyer
Ryan L. Hicks
Attorney for Plaintiffs AGUSTIN BENITEZ, CARLOS MORALES, and STEVEN VILLARREAL