1

2

3

4

5

6

7

8                         UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  AGUSTIN BENITEZ, CARLOS                  No. 1:18-cv-01484-SKO
    MORALES, and STEVEN VILLAREAL,
12  on behalf of themselves and all others
    similarly situated,
13                                           ORDER RE: PLAINTIFFS' UNOPPOSED
                    Plaintiffs,              MOTION FOR PRELIMINARY APPROVAL
14                                           OF CLASS SETTLEMENT
           v.
15                                           (Doc. 33)
    WESTERN MILLING, LLC, KRUSE
16  INVESTMENT COMPANY, INC., and
    PERFECTION PET FOODS, LLC,
17
                    Defendants.
18

19

20         On November 8, 2019, Plaintiffs Agustin Benitez, Carlos Morales, and Steven Villareal,

21  individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), filed an

22  unopposed motion for preliminary approval of class settlement.  (Doc. 33.)  The Court reviewed

23  Plaintiffs' papers and all supporting material and found the matter suitable for decision without

24  oral argument pursuant to U.S. District Court for the Eastern District of California's Local Rule

25  230(g).  The hearing set for December 11, 2019, was therefore VACATED.  (Doc. 34.)  For the

26  reasons set forth below, Plaintiffs' motion will be granted.[1]

27

28  _____
    [1] The parties consented to magistrate judge jurisdiction.  (Docs. 20 & 21.)

                                            1

# I. BACKGROUND

## A. Factual and Procedural Background

Defendants Kruse Investment Company ("KIC"), Western Milling, LLC ("WM"), and Perfection Pet Foods, LLC ("PPF") (collectively, "Defendants") are in the business of pet food manufacturing and operate, through PPF, a dog biscuit plant, dog kibble plant, and a warehouse in Visalia, California. (Doc. 29 ("FAC") ¶ 21). Plaintiffs and the putative class members ("PCMs") are former and current non-exempt, hourly employees who worked at any of Defendants' PPF pet food plans and/or warehouse in Visalia during the applicable limitations period. (FAC ¶ 45.) Defendants' facilities operated 24 hours per day, 7 days per week, and PCMs work either the day shift (7:00 a.m. to 7:30 p.m.) or the night shift (7:00 p.m. to 7:30 a.m.). (*Id*. ¶ 27.) Plaintiffs allege that Defendants failed to provide a timely first off-duty meal period before the end of the fifth hour of work and failed to provide a second meal period and a third off-duty rest period during the PCMs' 12-hour shifts. (*Id*. ¶ 28–29.) As a result of the meal and rest period policies and practices, Plaintiffs further allege that the meal and rest period violations resulted in derivative violations, including failing to provide premium pay for the untimely meal periods, failing to provide accurate, itemized wage statements, and failing to pay all wages owed after termination of employment. (*Id*. ¶ 34.)

On November 2, 2016, Plaintiffs filed a complaint alleging class wage and hour violations in this Court, styled *Villarreal, et al. v. Perfection Pet Foods, LLC*, Case No. 1:16-cv-01661-LJO-EPG. With that class complaint, Plaintiff Steven Villareal also asserted an individual claim of interference in violation of the Family Medical Leave Act ("FMLA"). (Case No. 1:16-cv-01661-LJO-EPG, Doc. 1.) On January 10, 2017, Plaintiffs filed an Amended Complaint in *Villareal* adding a claim for penalties pursuant to the Private Attorney General Act ("PAGA"). (*Id*., Doc. 11.) On February 7, 2017, PPF filed a motion to compel Plaintiffs to arbitrate the claims on an individual basis—which the Court granted on May 2, 2017, and dismissed *Villareal*. (*Id*., Docs. 14, 23.)

On January 9, 2018, Plaintiffs and PPF participated in an early mediation, which was unsuccessful. (FAC ¶ 39.) At the mediation, Plaintiffs informed PPF that it intended to bring

KIC and WM into the arbitration based on information they believed rendered KIC and WM joint employers of Plaintiffs and the PCMs. (*Id.* ¶ 40–41.) The settlement negotiations between Plaintiffs and PPF continued for some time following the unsuccessful mediation, and when the parties reached an impasse, they agreed upon an arbitrator, Hon. Robert Freedman (Ret.) of JAMS, and commenced the arbitration. (Doc. 33-2, Declaration of Ryan Hicks in Support of Plts.' Mot. for Prelim. Approval" ("Hicks Decl.") ¶ 8.) Discovery was then commenced in the arbitration, in addition to the substantial informal discovery that occurred prior to the first mediation, which included information regarding the dates worked and hourly rates paid to the CMs, purported severance agreements, purported on duty meal period agreements, purported arbitration agreements in three formats (some of which contained a class action waiver), and actual timekeeping data and payroll documents and wage statements for an audit sample of employees to confirm the other classwide data provided. (*Id.* ¶ 9.)

During July 2018 and continuing into 2019, Defendants engaged in an "individual settlement program" specifically to settle the claims at issue in *Villareal* and, ultimately, this action. (Hicks Decl. ¶ 10.) As a result, PPF obtained 194 releases from PCMs, for which $315,400 was paid to them. (*Id.* *See also* Docs. 33-4 – 33-12, Hicks Decl. Ex. 2.) Plaintiffs disputed the validity of the individual releases obtained through the individual settlement program and, had a settlement not ultimately been reached, intended to seek to invalidate the releases in both the arbitration and this action. (Hicks Decl. ¶ 10.)

On September 6, 2018, Plaintiffs filed their statement of claims against PPF in the arbitration and also named KIC and WM as respondents. (*Id.* ¶ 11.) KIC and WM objected, arguing that no agreement to arbitrate existed between them and Plaintiffs, and that they were not Plaintiffs' joint employers or an alter ego of PPF. (*Id.*) The parties then reached an agreement that Plaintiffs would not proceed against KIC and WM in the arbitration and instead would proceed by way of a separate court action. (*Id.*) Thereafter, on October 25, 2018, Plaintiffs filed this action against Defendants, asserting the same claims in *Villareal* except for the PAGA claim. (Doc. 1.)

On December 6, 2018, WM filed a motion to dismiss this action. (Doc. 8.) After the motion was briefed but before the hearing, the parties agreed to stay all proceedings in both the *Villareal* arbitration and this action and attempt another mediation to reach a global resolution of both matters. (Hicks Decl. ¶12.) The parties agreed to mediate the case with the assistance of mediator Paul Grossman, Esq., a partner in the law firm of Paul Hastings LLP who specializes in wage and hour mediations. (*Id.*) On May 16, 2019, the parties participated in a mediation before Mr. Grossman, and agreed subject to approval by the Court, to a global settlement of the *Villareal* arbitration and this action. To bring all of the claims asserted in both actions before this Court for the purposes of approval of the proposed settlement, the parties stipulated to the filing of a first amended complaint ("FAC"), which is the operative pleading in this action. (Docs. 31 & 32.)

The FAC asserts six causes of action under the California Labor Code, applicable Industrial Welfare Commission ("IWC") Wage Orders, and Business and Professions Code §§ 17200, et seq. ("UCL"). (Doc. 29.) Plaintiffs allege class and collective violations on behalf of themselves and the PCMs for: (1) failure to provide meal periods; (2) failure to provide rest periods; (3) failure to provide accurate wage statements; (4) waiting time penalties; and (5) violation of the UCL for unlawful, unfair, and/or fraudulent business acts or practices; and (6) penalties pursuant to the California Private Attorney General Act ("PAGA"). (*See id.*) Plaintiff Villarreal also asserts an individual claim for FMLA interference. (*See id.*)

On November 7, 2019, the parties executed the settlement agreement currently before the court. (Hicks Decl. ¶ 21.) The next day, Plaintiffs filed the present unopposed motion for conditional certification and for preliminary approval of the class action settlement. (Doc. 33.)

**B.  Proposed Settlement Agreement**

Pursuant to the terms of the parties' proposed settlement agreement, Plaintiffs seek to certify a class of "all current and former non-exempt hourly employees of PPF who worked at least one shift of more than five hours at any of PPF's Visalia, California pet food plants and/or warehouse" at any time during the class period as defined in the Settlement Agreement. (Doc. 33-3, "Class Action Settlement Agreement and Stipulation" (the "Settlement Agreement") at 7–8.)

Under the proposed settlement agreement, Defendants would pay a maximum settlement amount of $650,000 allocated as follows: (a) $315,400 already paid to 194 PCMs as a result of Defendants' individual settlement program to settle the claims of those PCMs; (b) attorney's fees of up to one-third, or $216,666.67, to be paid to class counsel, plus reasonable costs incurred (currently estimated to be roughly $17,000); (c) estimated settlement administration costs currently quoted at $6,900 to be paid to the settlement administrator Simpluris, Inc.; (d) penalties of $22,500 to be paid to the Labor and Workforce Development Agency ("LWDA") pursuant to California Labor Code § 2699(i); (f) incentive awards of $10,000 each to Plaintiffs Benitez and Morales and $20,000 to Plaintiff Villareal;[2] and (g) the remaining net settlement amount, estimated to be $31,934.33, to be distributed to the class members after taking into account payments already made via the individual settlement program.[3]  (Hicks Decl. ¶25; Settlement Agreement at 20–23.)  The net settlement amount will be distributed to class members based on the number of weeks worked for each class member divided by the total weeks worked by all class members during the class period.  (Settlement Agreement at 23.)

The proposed settlement provides that the settlement amount is non-reversionary.  (Hicks Decl. ¶ 25.)  If any checks remain uncashed after 90 days, those amounts will be donated to the *cy pres* beneficiary Valley Children's Hospital.  (*Id.*; *see also* Settlement Agreement at 31.)

Plaintiffs seek an order from this Court: (1) conditionally certifying the class for purposes of settlement, with appointment of Plaintiffs as class representatives, appointment of Plaintiffs' counsel as class counsel, and approval of Simpluris, Inc. as the settlement administrator; (2) preliminarily approving the settlement agreement; (3) approving the proposed form and method of notice to be disseminated to the class and authorizing said notice to be mailed; and (4) scheduling the hearing date for the final approval of the class settlement.  (Doc. 33.)

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) mandates that, "[t]he claims, issues, or defenses of a

---

[2] The additional $10,000 incentive award to Plaintiff Villareal is intended to resolve his individual FMLA claim. (*See* Settlement Agreement at 8.)

[3] PCMs who were already paid from Defendants' individual settlement program more than pro rata share of this settlement will not receive an additional payment from the net settlement fund.  (*See* Settlement Agreement at 23.)

certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  The following procedures apply to the court's review of the proposed settlement:

> The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
>
> If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
>
> The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
>
> . . .
>
> Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

*Id.*

"Courts have long recognized that settlement class actions present unique due process concerns for absent class members."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citation and internal quotations omitted).  To protect the rights of absent class members, Rule 23(e) requires that the court approve all class action settlements "only after a hearing and on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *Bluetooth*, 654 F.3d at 946.  However, when parties seek approval of a settlement agreement negotiated prior to formal class certification, "there is an even greater potential for a breach of fiduciary duty owed the class during settlement."  *Bluetooth*, 654 F.3d at 946.  Thus, the court must review such agreements with "a more probing inquiry" for evidence of collusion or other conflicts of interest than what is normally required under the Federal Rules.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).

Review of a proposed class action settlement ordinarily proceeds in three stages.  *See* Manual for Complex Litigation (4th) § 21.632.  First, the court conducts a preliminary fairness evaluation and, if applicable, considers class certification.  Second, if the court makes a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms, the parties are directed to prepare the notice of certification and proposed settlement to the class

members.  *Id.* (noting that if the parties move for both class certification and preliminary approval, the certification hearing and preliminary fairness evaluation can usually be combined).  Third, the court holds a final fairness hearing to determine whether to approve the settlement.  *Id.*; *see also Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1266–67 (9th Cir. 2010).

Here, the parties move for conditional class certification and preliminary approval of a class action settlement.  Though Rule 23 does not explicitly provide for such a procedure, federal courts generally find preliminary approval of settlement and notice to the proposed class appropriate if the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval."  *Lounibos v. Keypoint Gov't Sols. Inc.*, No. 12-cv-00636-JST, 2014 WL 558675, at *5 (N.D. Cal. Feb. 10, 2014) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)); *see also Dearaujo v. Regis Corp.*, Nos. 2:14-cv-01408-KJM-AC, 2:14-cv-01411-KJM-AC, 2016 WL 3549473 (E.D. Cal. June 30, 2016) ("Rule 23 provides no guidance, and actually foresees no procedure, but federal courts have generally adopted [the process of preliminarily certifying a settlement class].");  NEWBERG ON CLASS ACTIONS § 13:13 (5th ed. 2011).

### III.    DISCUSSION

**A.    Conditional Certification of Class**

Plaintiffs seek conditional certification of the proposed settlement class under Rule 23 of the Federal Rules of Civil Procedure.

1.    Rule 23(a) Requirements

"Rule 23(a) establishes four prerequisites for class action litigation:  (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation."  *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003).  The Court will address each requirement below.

*a.    Numerosity*

A proposed class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  The numerosity requirement demands "examination of the specific facts

of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980). Courts have found the requirement satisfied when the class comprises of as few as thirty-nine members, or where joining all class members would serve only to impose financial burdens and clog the court's docket. *See Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 474 (E.D. Cal. 2010) (citing *Jordan v. L.A. County*, 669 F.2d 1311, 1319 (9th Cir.), *vacated on other grounds*, 459 U.S. 810 (1982)) (discussing Ninth Circuit thresholds for numerosity); *In re Itel Secs. Litig.*, 89 F.R.D. 104, 112 (N.D. Cal. 1981).

Here, Plaintiffs assert that there are 234 members in the settlement class. (Doc. 33 at 19; Hicks Decl. ¶ 29.) The class is readily ascertainable because all class members have worked for PPF and can be easily identified through defendant's employee and payroll records. (*See* Settlement Agreement at 26–27.) This showing with respect to numerosity is adequate to meet the requirements of Rule 23(a)(1). *See, e.g.*, *Collins v. Cargill Meat Sols. Corp.*, 274 F.R.D. 294, 300 (E.D. Cal. 2011) ("Courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members.").

### b.     Commonality

Rule 23(a) also requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy the commonality requirement, the class representatives must demonstrate that common points of facts and law will drive or resolve the litigation. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.") (internal citations omitted). "Commonality is generally satisfied where . . . 'the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.'" *Franco v. Ruiz Food Prods., Inc.*, No. CV 10-02354 SKO, 2012 WL 5941801, at *5 (E.D. Cal. Nov. 27, 2012) (quoting *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005)). The rule does not require all questions of law or fact to be common to every single class member. *See Hanlon*, 150 F.3d at 1019 (noting that commonality can be found through "[t]he existence of shared legal issues with divergent factual

8

predicates"). However, the raising of merely any common question does not suffice. *See Dukes*, 564 U.S. at 349 ("[a]ny competently crafted class complaint literally raises common 'questions.'") (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 131–132 (2009)).

Here, Plaintiffs contend that the alleged California Labor Code meal and rest period violations are common to each member of the class. (Doc. 33 at 20; Hicks Decl. ¶ 30.) The proposed class action stems from the same factual and legal issues, including: (1) whether Defendants failed to provide to class members an off-duty 30-minute meal period prior to the end of their fifth hour of work; (2) whether Defendants failed to provide to class members a second off-duty 30-minute meal period prior to the end of their tenth hour of work; (3) whether Defendants authorized and permitted class members to take three 10-minute rest periods when they worked shifts longer than 10 hours; (4) whether Defendants failed to pay class members a premium wage for all missed and/or non-compliant meal and rest periods; and (5) whether additional violations resulted therefrom. (FAC ¶ 47.) Because it appears that the same conduct which defendant allegedly engaged in "would form the basis of each of the plaintiff's claims," the Court finds that commonality is satisfied.[4] *Murillo*, 266 F.R.D. at 475 (citing *Acosta v. Equifax Info. Servs., L.L.C.*, 243 F.R.D. 377, 384 (C.D. Cal. 2007) (internal quotation marks omitted)).

### c.   Typicality

Rule 23(a)(3) also requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3); *Armstrong*, 275 F.3d at 868. Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong*, 275 F.3d at 868; *see also Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (claims are typical where named plaintiffs have the same claims as other members of the class and are not subject to unique defenses). While representative claims must be "reasonably co-extensive with those of absent class members," they "need not be substantially identical."

---

[4] The Court presumes the parties will submit <u>evidence</u> to support the final approval.

*Hanlon*, 150 F.3d at 1020; *see also Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Plaintiffs are members of the class identified in the settlement agreement.  (*See* FAC ¶¶ 22–24, 48.  Plaintiffs were employed at Defendants' PPF facilities in Visalia, CA as non-exempt hourly workers during the class period, and, even if they were not serving as class representatives, would be members of the class.  (Doc. 33 at 20; Hicks Decl. ¶ 31; FAC ¶¶ 22–24, 48.)  Thus, Plaintiffs' claims arise from the same factual basis and are based upon the same legal theories as those applicable to class members.  (*Id.*)  The Court concludes that Plaintiffs' claims are reasonably co-extensive with those of the settlement class, and that typicality is therefore satisfied here.

### d.    Adequacy of Representation

The final Rule 23(a) prerequisite is satisfied if "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000); *see also Pierce v. County of Orange*, 526 F.3d 1190, 1202 (9th Cir. 2008).

Plaintiffs' counsel represents that the proposed class representatives, Plaintiffs Benitez, Morales, and Villareal, seemingly have no conflicts of interests adverse to those of the class members and are committed to vigorously prosecuting the case on behalf of the class.  (Hicks Decl. ¶ 32; Doc. 33 at 20–21.)  Moreover, counsel has provided a declaration representing that they have no conflicts of interest and are experienced litigators who are fully qualified to pursue the interests of the class.  (Hicks Decl. ¶¶ 2–3, 32.)  As such, the Court finds that Plaintiffs and their counsel satisfy the adequacy of representation requirement.

### 2.    Rule 23(b)(3) Requirements

In addition to the requirements of Rule 23(a), Rule 23(b)(3) requires: (i) that the questions of law or fact common to class members predominate over any questions affecting only

individual members; and (ii) that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997). The test of Rule 23(b)(3) is "far more demanding," than that of Rule 23(a). *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (quoting *Amchem*, 521 U.S. at 623–24). The Court examines each requirement in turn below.

### a. Predominance

First, common questions must "predominate" over any individual questions. While this requirement is similar to the Rule 23(a)(2) commonality requirement, the standard is much higher at this stage of the analysis. *Dukes*, 564 U.S. at 359; *Amchem*, 521 U.S. at 624–25; *Hanlon*, 150 F.3d at 1022. While Rule 23(a)(2) can be satisfied by even a single question, Rule 23(b)(3) requires convincing proof the common questions "predominate." *Amchem*, 521 U.S. at 623–24; *Hanlon*, 150 F.3d at 1022. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.

Plaintiffs contend that all class members during the class period were subject to the same policies and procedures of Defendants and, thus, share a common nucleus of operative facts and potential legal remedies. (Hicks Decl. ¶33; Doc. 33 at 21.) In this case, common questions about Defendants' policies and practices predominate over individual questions because class members were uniformly subject to Defendants' alleged unlawful practices and Labor Code violations and are able to seek the same form of damages and penalties. (*Id.*) Class actions in which a defendant's uniform policies are challenged generally satisfy the predominance requirement of Rule 23(b)(3). *See Palacios v. Penny Newman Grain*, No. 1:14-cv-01804, 2015 WL 4078135, at *5–6 (E.D. Cal. July 6, 2015); *see also Clesceri v. Beach City Investigations & Protective Servs., Inc.*, No. CV-10-3873-JST RZX, 2011 WL 320998, at *7 (C.D. Cal. Jan. 27, 2011). The predominance requirement has therefore been met in this case.

### b. Superiority

Rule 23(b)(3) also requires a court to find "a class action is superior to other available

methods for the fair adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In resolving the Rule 23(b)(3) superiority inquiry, "the court should consider class members' interests in pursuing separate actions individually, any litigation already in progress involving the same controversy, the desirability of concentrating in one forum, and potential difficulties in managing the class action—although the last two considerations are not relevant in the settlement context." *See Palacios*, 2015 WL 4078135, at *6 (citing *Schiller v. David's Bridal Inc.*, No. 10-0616, 2012 WL 2117001, at *10 (E.D. Cal. June 11, 2012)).

By consolidating approximately 234 potential individual actions into a single proceeding here, where there was a parallel concurrent class and collective arbitration of an overlapping class asserting these same claims, and there were multiple arbitration agreements among the class members (some of which contained class waivers, and some which stated that the Federal Arbitration Act did not apply), Plaintiffs assert that the class action device enables more efficient management of this litigation for the Court and the litigants alike. (Hicks Decl. ¶ 34; Doc. 33 at 22.) Plaintiff also contends that, absent class treatment, class members' individual actions would potentially involve both arbitrations and lawsuits, requiring duplicative discovery and creating the possibility of conflicting decisions between them. (*Id.*) These reasons are persuasive, and warrant finding that the superiority requirement is also satisfied here.

## B.  Preliminary Fairness Determination

Plaintiffs also seek the preliminary approval of the proposed settlement. Under Rule 23(e), a court may approve a class action settlement only if the settlement is fair, reasonable, and adequate. *Bluetooth*, 654 F.3d at 946. "[P]reliminary approval of a settlement has both a procedural and substantive component." *See, e.g.*, *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079 (citing *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 570 n.12 (E.D. Pa. 2001)). In particular, preliminary approval of a settlement and notice to the proposed class is appropriate if: (i) the proposed settlement appears to be the product of serious, informed, non-collusive negotiations; and (ii) the settlement falls within the range of possible approval, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives or segments of the class. *Id.*; *see also Ross v. Bar None Enters., Inc.*, No.

2:13–cv–00234–KJM–KJN, 2014 WL 4109592, at *9 (E.D. Cal. Aug. 19, 2014).  However, a district court reviewing a proposed settlement is not to "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute."  *Chem. Bank v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).

### 1.  Procedural Fairness

The Court must consider whether the process by which the parties arrived at their settlement is truly the product of arm's length bargaining, rather than collusion or fraud.  *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 613 (E.D. Cal. May 31, 2016).  A settlement is presumed fair if it "follow[s] sufficient discovery and genuine arms-length negotiation."  *Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)).

As noted above, in May 2019, the parties attended mediation with Paul Grossman, who specializes in resolving wage and hour class action matters.  (Hicks Decl. ¶¶ 18, 25; Doc. 33 at 12, 14, 23.)  This was the parties' second mediation attempt to resolve these claims.  (Hicks Decl. ¶¶ 5, 35; Doc. 33 at 10, 23.)  Plaintiffs contend that during mediation, the parties engaged in good-faith, non-collusive negotiations.  (Hicks Decl. ¶¶ 5, 18, 35; Doc. 33 at 10, 12, 14, 23.)  The parties exchanged additional information regarding Defendants' realistic exposure to damages, the relative strengths and weaknesses of Plaintiffs' claims, the risks and delays of further litigation, the current state of the law as it related to Plaintiffs' claims, and the difficulty Plaintiffs may have in obtaining and maintaining class certification on each of the claims in both the arbitration and the litigation.  (Hicks Decl. ¶¶ 6, 9, 13, 35; Doc. 33 at 13–14.)  Moreover, Plaintiffs' counsel represents that they conducted a thorough investigation into the merits of Plaintiffs' claims, including: reviewing Plaintiffs' employment records; exchanging thousands of pages of documents, including a full list of every CM, with contact information, employee handbooks and policies applicable to the class members, and time records and pay records for the class period; and conducting detailed phone interviews with a substantial number of the class members. (*Id.*)

Based on these representations, the Court concludes that the parties' negotiation that

resulted in the proposed settlement constituted genuine, informed, arms-length bargaining.

## 2. Substantive Fairness

### a. Adequacy of the Settlement Amount

To evaluate the fairness of the settlement award, the court should "compare the terms of the compromise with the likely rewards of litigation." *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). To determine whether a settlement "falls within the range of possible approval" a court must focus on "substantive fairness and adequacy," and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080.

Here, the total proposed settlement is for $650,000, with a credit of $315,400 applied reflecting the amount paid to the 194 class members as part of the individual settlement program. (Settlement Agreement at 13, 20–21.) The remaining $334,600 shall be deposited into a common fund for distribution to the class, payment of notice and claims administration costs, the payment of PAGA penalties to LWDA, incentive awards to the named plaintiffs, and attorney's fees and costs. (*Id.*) The allocations to the class claims will occur after all other distributions are made from the common fund. (*Id.* at 10, 14, 21–23.) Defendants have also agreed to separately cover the employers' share of payroll taxes on the amounts paid as wages. (*Id.* at 24.) Plaintiffs estimate that the maximum potential damages for the primary class claims (excluding statutory penalties) is approximately $2,166,304.86, making the total settlement fund of $650,000 a 30 percent recovery of the plaintiffs' primary claims.[5] (Hicks Decl. ¶ 16; Doc. 33 at 13.) If the maximum non-PAGA statutory penalties are included, the settlement recovery rate is approximately 24 percent.[6] (*Id.*) After accounting for PAGA penalties, the recovery rate is

---

[5] This assumes 100 percent recovery and accounts for meal period premiums ($1,083,152.43) and rest break premiums ($1,083,152.43). (Hicks Decl. ¶ 16; Doc. 33 at 13.)

[6] The maximum non-PAGA statutory penalties include $295,430.10 in waiting time penalties and $213,750.00 in

approximately 13 percent.  (*Id.*)  This settlement amount is consistent with percentage recoveries California district courts have found to be reasonable for this purpose.  *See, e.g.*, *Villegas v. J.P. Morgan Chase & Co.*, No. 09-00261 SBA (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (gross settlement of approximately 15 percent of potential recovery found to be preliminarily fair); *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (settlement of approximately 25 to 35 percent of the amount of damages the plaintiffs could have hoped to prove at trial was reasonable).  Accordingly, the settlement amount proposed here is not per se unreasonable.

Plaintiffs contend that the settlement amount reflecting a discount of the total possible recovery is appropriate here because it takes into account the specific defenses asserted by Defendants, including: the possibility that statutory penalties for PAGA and the derivative claims may not be available for the underlying violations, pursuant to recent case law;[7] the disputed releases signed by the majority of the class members; arbitration agreements containing various class waivers; purported on duty meal period agreements; Defendants' joint employer issues; and the difficulty of pursuing the claims in a parallel class arbitration and federal class action with overlapping but not identical classes (Hicks Decl. ¶¶ 16, 36; Doc. 33 at 25).  *See Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615, 623 (9th Cir. 1982).

In light of these anticipated defenses and the risks to the class posed thereby, the Court finds the proposed settlement to be reasonable and will preliminarily approve the amount offered to settle the claims.

---

wage statement violations.  (*Id.*)

[7] *See, e.g., Guifi Li v. A Perfect Day Franchise Inc.*, No. 5:10-CV-01189-LHK, 2012 WL 2236752, at *17 (N.D. Cal. June 15, 2012) (declining to award PAGA penalties for the failure to provide accurate wage statements as "duplicative recovery" in light of damages awarded under Cal. Labor Code § 226); *ZB, N.A. v. Superior Court*, 8 Cal. 5th 175, 195–96 (2019) (holding that PAGA authorizes a representative action only for the purpose of seeking civil penalties for Labor Code violations, and an action to recover civil penalties is fundamentally a law enforcement action, not one for the benefit of private parties); *Naranjo v. Spectrum Sec. Servs., Inc.*, 40 Cal. App. 5th 444, 474 (Ct. App. 2019) (holding that actions for violations of the Labor Code's meal break provisions do not entitle employees to pursue the derivative waiting time and itemized wage statement penalties).

*b.    PAGA Penalties*

Under PAGA, an "aggrieved employee" may bring an action for civil penalties for labor code violations on behalf of herself and other current or former employees. Cal. Lab. Code § 2699(a).[8] A plaintiff suing under PAGA "does so as the proxy or agent of the state's labor law enforcement agencies." *Arias v. Superior Court*, 46 Cal. 4th 969, 986 (2009).

The PAGA statute requires trial courts to "review and approve" any settlement of PAGA claims. Cal. Lab. Code § 2699(*l*)(2).[9] In the absence of authority governing the standard of review of PAGA settlements, the LWDA has in one action provided some guidance to the Court. *See* California Labor and Workforce Development Agency's Comments on Proposed PAGA Settlement, *O'Connor v. Uber Techs., Inc.*, No. 3:13-cv-03826-EMC (N.D. Cal. Jul. 29, 2016), Doc. No. 736 at 2–3. There, where both class action and PAGA claims were covered by a proposed settlement, the LWDA acknowledged that it was "not aware any existing case law establishing a specific benchmark for PAGA settlements, either on their own terms or in relation to the recovery on other claims in the action" but stressed that:

> when a PAGA claim is settled, the relief provided for under the PAGA be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, the court evaluate whether the settlement meets the standards of being "fundamentally fair, reasonable, and adequate" with reference to the public policies underlying the PAGA.

*Id.*; *see also O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) (same).

Recognizing the distinct issues presented by class actions, this court is nevertheless persuaded by the LWDA's reasoning expressed in *O'Connor* and therefore adopts its proposed standard in evaluating the PAGA-related settlement agreement now before the court. Accordingly, the Court will approve a settlement of PAGA claims upon a showing that the settlement terms (1) meet the statutory requirements set forth by PAGA, and (2) are

---

[8] An "aggrieved employee" is defined as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." Cal. Lab. Code § 2699(c).

[9] The proposed settlement must also be submitted to the California Labor and Workforce Development Agency ("LWDA") at the same time it is submitted to the court. *Id.*

fundamentally fair, reasonable, and adequate[10] in view of PAGA's public policy goals.

Here, in accordance with the statute's requirements, Plaintiffs' counsel indicates that they submitted a copy of their settlement agreement to the LWDA concurrently with the filing of the present motion.[11] (Hicks Decl. ¶ 23 n.1.) The proposed settlement agreement allocates $30,000 to Plaintiffs' PAGA claims. (Settlement Agreement at 13, 22.) Of that amount, 75 percent, or $22,500, will be paid to the LWDA, and 25 percent, or $7,500, will be returned to the portion of the settlement allocated to the class members.[12] (*Id.*) The allocation of the PAGA penalties accounted for the uncertain recovery of such penalties in light of recent case law. (*See* Section III.B.2.a, *supra*.) To date, the LWDA has not commented on or objected to this settlement of the PAGA claims. As such, the court preliminarily approves the PAGA penalties in the settlement as fair, reasonable, and adequate in light of the public policy goals of PAGA.

          *c.*     *Attorney's Fees*

When a negotiated class action settlement includes an award of attorney's fees, the fee award must be evaluated in the overall context of the settlement. *Knisley v. Network Assocs.*, 312 F.3d 1123, 1126 (9th Cir. 2002). At the same time, the court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941; *see also Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328–29 (9th Cir. 1999). Where, as here, fees are to be paid from a common fund, the relationship between the class members and class counsel "turns adversarial." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994). As a result, the district court must assume a fiduciary role for the class members in evaluating a request for an award of attorney fees from the common fund. *Id.*; *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009).

---

[10] The court's determination as to fairness, reasonableness, and adequacy may involve a balancing of several factors including but not limited to the following: the strength of plaintiffs' claims; the risk, expense, complexity, and likely duration of further litigation; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; and the experience and views of counsel. *See Officers for Justice*, 688 F.2d at 625.

[11] The proposed settlement was to be sent to the agency when it was submitted to the court. *See* Cal. Lab. Code § 2699(l)(2).

[12] Civil penalties recovered under PAGA are distributed between the LWDA (75 percent) and the aggrieved employees (25 percent). *Id.* § 2699(i).

The Ninth Circuit has approved two methods for determining attorney's fees in such cases where the attorney's fee award is taken from the common fund set aside for the entire settlement: the "percentage of the fund" method and the "lodestar" method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citation omitted). The district court retains discretion in common fund cases to choose either method. *Id.*; *Vu v. Fashion Inst. of Design & Merch.*, No. CV 14-08822 SJO (EX), 2016 WL 6211308, at *5 (C.D. Cal. Mar. 22, 2016). Under either approach, "[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002).

Under the percentage of the fund method, the court may award class counsel a given percentage of the common fund recovered for the class. *Id.* In the Ninth Circuit, a twenty-five percent of the common fund award is the "benchmark" amount of attorney's fees, but courts may adjust this figure upwards or downwards if the record shows "special circumstances justifying a departure." *Id.* (quoting *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). The typical range of acceptable attorney's fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). Nonetheless, an explanation is necessary when the district court departs from the twenty-five percent benchmark. *Id.* at 1256–57.

To assess whether the percentage requested is reasonable, courts may consider a number of factors, including:

> [T]he extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015) (internal quotation marks omitted). The Ninth Circuit has permitted courts to award attorney's fees using this method "in lieu of the often more time-consuming task of calculating the lodestar." *In re*

*Bluetooth*, 654 F.3d at 942.

Here, as Plaintiffs' claims are based on state law, California law governs the award and calculation of attorney's fees. *See Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1024 (9th Cir. 2003) ("An award of attorneys' fees incurred in a suit based on state substantive law is generally governed by state law."). Under California law, "[t]he primary method for establishing the amount of reasonable attorney fees is the lodestar method." *In re Vitamin Cases*, 110 Cal. App. 4th 1041, 1053 (2003) (internal quotation marks and citations omitted). The court determines the lodestar amount by multiplying a reasonable hourly rate by the number of hours reasonably spent litigating the case. *See Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 (9th Cir. 2001). The product of this computation, the "lodestar" amount, yields a presumptively reasonable fee. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). The Ninth Circuit has recommended that district courts apply one method but cross-check the appropriateness of the amount by employing the other as well. *See In re Bluetooth*, 654 F.3d at 944.

Here, the proposed settlement provides that class counsel will seek an award of attorney's fees "up to" one-third, or $216,666.67, which represents 33.333% of the total settlement amount of $650,000. (Settlement Agreement at 21.) It is unclear what is meant by "up to," and the Court assumes that counsel will be requesting 33.333%.

This fee amount is above the 25% benchmark for this circuit. *See Bluetooth*, 654 F.3d at 947; *Six (6) Mexican Workers*, 904 F.2d at 1311; *Staton*, 327 F.3d at 952 n.15. However, this percentage is within the accepted range outlined by the Ninth Circuit. Moreover, Plaintiffs' counsel asserts that even under the lodestar approach, $216,666.67 is appropriate because it is less than the lodestar amount, currently $200,000, for the entire litigation through final approval. (Hicks Decl. ¶ 43.) The Court notes that the settlement agreement includes a "clear sailing" provision, in which defendants agree not to contest the class counsel's award of attorney's fees or costs. (Settlement Agreement at 21.) Although the "very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class," the existence of a clear sailing provision is not necessarily fatal to final approval.

*Bluetooth*, 654 F.3d at 948 (citations omitted). Rather, "when confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class." *Id.* (citing *Staton*, 327 F.3d at 954).

Because the percentage of the gross fund is within the accepted range outlined by the Ninth Circuit, and counsel has represented that the requested amount falls below the lodestar amount, the Court is satisfied, for purposes of preliminary approval, that the award is reasonable and does not betray the class's interests. *See In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("This court's review of recent reported cases discloses that nearly all common fund awards range around 30% even after thorough application of either the lodestar or twelve-factor method."). In connection with final approval, however, the Court will again examine the award of attorney's fees, and Plaintiffs' counsel is directed to provide the Court with the necessary records, including evidence related to hours worked and tasks undertaken, for it to conduct a lodestar cross-check and determine whether this amount of attorney's fees is fair and reasonable here.

### d. Incentive Payments

While incentive awards are "fairly typical in class action cases," they are discretionary sums awarded by the court "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *West Publ'g Corp.*, 563 F.3d at 958–59; *Staton*, 327 F.3d at 977 ("[N]amed plaintiffs . . . are eligible for reasonable incentive payments."). Such payments are to be evaluated individually, and should look to factors such as "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." *Staton*, 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)). Such awards must be "scrutinize[d] carefully . . . so that they do not undermine the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013).

Thus, incentive awards which are explicitly conditioned on the representatives' support for the settlement, as well as those that are significantly higher than the average amount awarded pursuant to the settlement, should often not be approved. *Id.* at 1164–65. The core inquiry is whether an incentive award creates a conflict of interest, and whether the plaintiffs "maintain a sufficient interest in, and nexus with, the class so as to ensure vigorous representation." *In re Online DVD-Rental*, 779 F.3d at 943.

Here, Plaintiffs have requested an incentive award of $40,000, with Plaintiffs Benitez and Morales receiving $10,000 each and Plaintiff Villareal receiving $20,000.[13] (Settlement Agreement at 8, 22.) This appears to be excessive under the circumstances of the case. It is more than the amount that the Ninth Circuit has considered presumptively reasonable. *See Resnick v. Frank (In re Online DVD–Rental Antitrust Litig.)*, 779 F.3d 934, 947 (9th Cir. 2015) (observing $5,000 incentive award reasonable) (citing *Staton*, 327 F.3d at 976–77). The total incentive award of $40,000 amounts to 6.1 percent of the overall settlement amount of $650,000. In comparison, under the net settlement amount of $31,533.33 for the class, each of the approximately 40 remaining class members who were not part of Defendants' individual settlement program would receive an average payment of "approximately $1,484.33" (although the actual amount will vary depending on each class member's weeks worked) (Doc. 33 at 27). *See Sandoval v. Tharaldson Emple. Mgmt.*, No. EDCV 08-482-VAP (OPx), 2010 WL 2486346, at *9–10 (C.D. Cal. June 15, 2010) (collecting cases and concluding that the plaintiff's request for an incentive award representing one percent of the settlement fund was excessive). *See also Sanchez v. Frito-Lay, Inc.,* No. 1:14–cv–00797 AWI–MJS, 2015 WL 4662636, at *20–21 (recommending $10,000 incentive award payment to named plaintiff be reduced to $7,500), *report and recommendation adopted*, No. 1:14-CV-797-AWI-MJS, 2015 WL 5138101 (E.D. Cal. Aug. 26, 2015). The cases cited by Plaintiffs do not support approval of incentive awards in these amounts. *See, e.g.*, *Aguilar v. Wawona Frozen Foods*, No. 1:15-cv-00093-DAD-EPG, 2017 WL 2214936, at *8 (E.D. Cal. May 19, 2017) (awarding $15,000 in total incentive payments from a

---

[13] The additional $10,000 awarded to Plaintiff Villareal is to settle his individual FMLA claim. (Settlement Agreement at 8, 22.)

$4.5 million fund, or 0.33 percent of the fund); *Davis v. Brown Shoe Co., Inc.*, No. 1:13-cv-01211-LJO-BAM, 2015 WL 6697929, at *12 (E.D. Cal. Nov. 3, 2015) (approving $16,500 in total incentive awards from a $1.5 million fund, or 1.1 percent of the fund).

Moreover, Plaintiffs have not submitted any evidence to support their counsel's statements that they have spent "dozens of hours working on this case." (*See* Hicks Decl. ¶ 41.) There is no identification of any actions Plaintiffs taken on behalf of the class, or an explanation of how the class members benefited from these actions. Accordingly, the Court is unable to evaluate the reasonableness of requested awards now. In seeking final approval, Plaintiffs must provide evidence supporting the requested enhancement, e.g., .evidence of the specific amount of time each Plaintiff spent on the litigation, the particular risks and burdens carried by Plaintiffs as a result of the action, or the particular benefit that each Plaintiff provided to counsel and the class as a whole throughout the litigation. *See Bautista v. Harvest Mgmt. Sub LLC*, No. CV 12-10004 FMO (CWx), 2013 WL 12125768, at *15 (C.D. Cal. Oct. 16, 2013). Nevertheless, the Court will preliminarily approve of a class representative enhancement in an amount **up to** $20,000 for Plaintiff Villareal and **up to** $10,000 each for Plaintiffs Benitez and Morales. *See Salgado v. T-Mobile USA, Inc.*, Case No. 1:17-cv-0339-JLT, 2019 WL 6324024, at *12 (E.D. Cal. Nov. 26, 2019).

### e.    *Release of Claims*

Finally, the release proposed as part of the settlement appropriately tracks the allegations of the FAC, the operative pleading in this case. The proposed settlement defines "Released Claims" as:

> Any and all Claims, during the Class Period, that could have been made based on the facts pled in the Actions through the date of Preliminary Approval including, but not limited to, failure to provide meal periods (California Labor Code sections 226.7, 512; applicable Industrial Welfare Commission Wage Order); failure to authorize and permit rest periods (California Labor Code section 226.7; applicable Industrial Welfare Commission Wage Order); failure to provide accurate itemized wage statements (California Labor Code section 226; applicable Industrial Welfare Commission Wage Order); failure to timely pay final wages (California Labor Code sections 201, 202, 203; applicable Industrial Welfare Commission Wage Order); violations of California Business and Professions Code sections 17200, *et seq.*; violations of Industrial

22

Welfare Commission Wage Orders; penalties under California Labor Code sections 2698, *et seq.*; and any other Claims that were alleged or could have been alleged under any state, municipal, or federal statute, ordinance, regulation, order, or common law based on the facts and Claims alleged in the Actions, including, but not limited to, claims under California Labor Code sections 90.5, 200, 201, 201.5, 202, 203, 204, 204b, 210, 218, 218.5, 218.6, 221, 222, 223, 226, 226.3, 226.4, 226.6, 226.2, 226.7, 510, 512, 550, 551, 552, 558, 558.1, 1174, 1174.5, 1175, 1194, 1194.2, 1194.3, 1197, 1197.1, 1198, and 2802, violations of California Business and Professions Code sections 17200, *et seq.*, California Labor Code sections 2698, *et seq.*, and California Code of Civil Procedure section 1021.5.

(Settlement Agreement at 11.) As such, the released claims track Plaintiffs' allegations in this action and the settlement does not release unrelated claims that class members have against defendant. *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir.2010) ("A settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but *only where* the released claim is based on the identical factual predicate as that underlying the claims in the settled class action.") (citations and internal quotation marks omitted) (emphasis added); *cf. Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 303 (E.D.Cal.2011) (holding that release of claims was not overly broad because the "released claims appropriately track the breadth of Plaintiffs' allegations in the action and the settlement does not release unrelated claims that class members may have against defendants").

## C.     Proposed Class Notice and Administration

For proposed settlements under Rule 23, "the court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1); *see also Hanlon*, 150 F.3d at 1025 ("Adequate notice is critical to court approval of a class settlement under Rule 23(e)."). For a class certified under Federal Rule of Civil Procedure 23(b)(3), the notice must contain, in plain and easily understood language, (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) that a class member may appear through an attorney if desired; (5) that the court will exclude members who seek exclusion; (6) the time and manner for requesting an exclusion; and (7) the binding effect of a

class judgment on members of the class. Fed. R. Civ. P. 23(c)(2)(B). A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., LLC v. Gen. Elec.*, 561 F.3d 566, 575 (9th Cir. 2004) (internal quotations and citations omitted).

Here, the proposed settlement provides that the settlement administrator will receive a list of class member names and last known contact information within ten days of preliminary approval. (Settlement Agreement at 26.) The settlement administrator will subsequently send notice to those class members. (*Id.*). The settlement administrator will make reasonable efforts to locate a correct address, including use of "skip tracing" and National Change of Address searches, and will resend notice for each envelope returned as undeliverable. (*Id.*) The proposed class notice also sets out the means and deadlines for class members to object to the proposed settlement and/or to be excluded from the settlement. (Doc. 33-3 at 51–58.) The Court finds that the manner of notice proposed by plaintiffs appears to be the "best notice that is practicable under the circumstances" and is in full compliance with the applicable laws and the requirements of due process. The Court further finds that notice meets the requirements of Federal Civil Procedure Rule 23(c)(2)(B), in that it appears to fully and accurately inform the class members of all material elements of the proposed settlement agreement, of the class members' right to be excluded from the settlement, and of each class members' right and opportunity to object to the settlement.

In addition, Plaintiffs have proposed the following implementation schedule:

| EVENT | DATE |
|---|---|
| Defendant to provide to Simpluris a database containing class members' contact information | 10 days after entry of order granting preliminary approval of the settlement |
| Simpluris to Mail the Notices. | 10 days after receipt of class list from Defendants |
| Deadline to postmark requests to opt-out, objections to settlement, or dispute the information shown in class notice pursuant to the instructions set forth in the class notice | 60 days after class notice is mailed |

| | |
|---|---|
| Simpluris provides all counsel with report listing estimated settlement payment to be made to each class members, and any opt-outs or exclusions received | 10 days after close of opt-out period |
| Class Counsel to file Simpluris' verification that the class notice has been completed | On or before the date of the final approval hearing |
| Final Approval Hearing | No earlier than 100 days after preliminary approval is granted |
| Effective Date | (a) if no objections to the settlement are filed, then the effective date shall be the date of final court approval; or (b) if objections to the settlement are filed, the date of final court approval of the settlement **and** the expiration of the time to file appeals or the resolution of any appeals filed |
| Simpluris to provide to PPF calculation of net settlement fund and employer's share of payroll taxes ("settlement calculation") | 5 calendar days after effective date |
| Simpluris to mail notice of final approval to class members | 10 calendar days after effective date |
| Defendants to wire the settlement fund deposit amount to Simpluris | 10 calendar days after settlement calculation or 10 calendar days after effective date, whichever is later |
| Fees and costs, class representative awards, class awards, LWDA payment to be paid by Simpluris | No later than 10 calendar days after Defendants deposit settlement fund deposit amount |
| Simpluris to stop payment on checks for class members that do not timely opt-out and so receive a payment, but do not cash settlement check and transmit funds to the Court-approved *cy pres* beneficiary | 90 days after issuance of awards |

The Court finds that the notice and the manner of notice proposed by Plaintiffs meets the requirements of Federal Civil Procedure Rule 23(c)(2)(B) and that the proposed mail delivery is also appropriate.

## IV.    CONCLUSION

For the reasons stated above, Plaintiffs' motion for preliminary approval of class action settlement (Doc. 33) is granted as follows:

1.    Conditional class certification under Rule 23 is approved, and the settlement class is defined as follows:

[A]ll current and former non-exempt hourly employees of Perfection Pet Foods, LLC ("PPF") who worked at least one shift of more than five hours at any of PPF's Visalia, California pet food plants and/or warehouse at any time from November 2, 2012, through the date of preliminary approval;

2.    Plaintiffs' counsel Hoyer & Hicks, and United Employees Law Group, P.C. are

25

1    appointed as class counsel;

2    3.    The named plaintiffs, Agustin Benitez, Carlos Morales, and Steven Villareal, are

3          appointed as class representatives;

4    4.    The proposed notice conforms with Federal Rule of Civil Procedure 23 and is

5          approved;

6    5.    Simpluris, Inc. is approved as claims administrator; and

7    6.    The proposed settlement detailed herein is approved on a preliminary basis as fair

8          and adequate;

9    7.    Plaintiffs' request for class representative enhancement payments are granted

10         preliminarily—subject to a petition and review at the Final Approval and Fairness

11         Hearing—in the amounts up to $20,000 for Steven Villareal; $10,000 for Agustin

12         Benitez, and $10,000 for Carlos Morales.  Class members and their counsel may

13         support or oppose this request, if they so desire, at the final approval and fairness

14         hearing;

15   8.    Class counsel's requests for fees not to exceed 33.333% of the gross settlement

16         amount and expenses up to $17,000 are granted preliminarily, subject to counsel's

17         petition for fees and review at the final approval and fairness hearing.  Class

18         members and their counsel may support or oppose this request, if they so desire, at

19         the final approval and fairness hearing.

20   9.    The hearing for final approval of the proposed settlement is set for May 20, 2020

21         at 9:30 a.m. before the undersigned in Courtroom 7, with the motion for final

22         approval of class action settlement to be filed at least twenty-eight (28) days in

23         advance of the final approval hearing, in accordance with Local Rule 230; and

24   10.   Plaintiffs' proposed settlement implementation schedule is adopted.

IT IS SO ORDERED.

Dated:    **January 21, 2020**                    /s/ *Sheila K. Oberto*

UNITED STATES MAGISTRATE JUDGE

26