# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

AGUSTIN BENITEZ, CARLOS MORALES, and STEVEN VILLAREAL, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

WESTERN MILLING, LLC, KRUSE INVESTMENT COMPANY, INC., and PERFECTION PET FOODS, LLC,

Defendants.

_____/

Case No.  1:18-cv-01484-SKO

**ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND UNOPPOSED MOTION FOR ATTORNEYS' FEES**

**(Docs. 37, 38)**

## I.   INTRODUCTION

This matter comes before the Court on Plaintiffs' Unopposed Motion for Final Approval of Class Settlement, (Doc. 37), and Plaintiffs' Unopposed Motion for Attorneys' Fees, (Doc. 38), filed on April 22, 2020.  The Court deemed the motions suitable for decision without oral argument under Local Rule 230(g), and vacated the hearing set for May 20, 2020.  (Doc. 39.)  For the reasons stated below, the Court GRANTS Plaintiffs' motions.

## II.   RELEVANT BACKGROUND

**A.   The Complaint**

This case involves alleged class wage and hour violations under the California Labor Code, applicable Industrial Welfare Commission ("IWC") Wage Orders, and Business and Professions

1  Code §§ 17200, et seq. (the "UCL").  Plaintiffs filed the operative first amended complaint

2  ("FAC") on September 19, 2019.  (Doc. 29.)  Plaintiffs allege six claims on behalf of themselves

3  and the class: (1) failure to provide meal periods; (2) failure to provide rest periods; (3) failure to

4  provide accurate wage statements; (4) waiting time penalties; (5) violation of the UCL for

5  unlawful, unfair, and/or fraudulent business acts or practices; and (6) penalties pursuant to the

6  California Private Attorney General Act ("PAGA").  (*See id.*)  Plaintiff Villarreal also asserts an

7  individual claim for interference under the Family and Medical Leave Act ("FMLA").  (*See id.*)

8  **B.**    **The Proposed Settlement Agreement**

9        On November 7, 2019, the parties executed the settlement agreement, (Doc. 37-1 at 26–

10  84) currently before the court.  (*See* Doc. 37 at 12.)  Pursuant to the settlement agreement, Plaintiffs

11  seek to certify a class of "all current and former non-exempt hourly employees of PPF who worked

12  at least one shift of more than five hours at any of PPF's Visalia, California pet food plants and/or

13  warehouse, at any time during the Class Period."  (Doc. 37-1 at 31–32.)  The "Class Period" is

14  defined as the period beginning on November 2, 2012 and ending on the date this Court entered

15  the order granting preliminary approval of the class settlement, January 21, 2020.  (*Id.* at 32.)

16        Under the proposed settlement agreement, Defendants would pay a maximum settlement

17  amount of $650,000 allocated as follows: (a) $315,400 already paid to 194 putative class members

18  as a result of Defendants' individual settlement program to settle the claims of those putative class

19  members; (b) attorney's fees of up to $216,666.67 to be paid to class counsel, plus reasonable costs

20  incurred, estimated at $17,000; (c) estimated settlement administration costs of $6,499 to be paid

21  to the settlement administrator, Simpluris, Inc.; (d) penalties of $22,500 to be paid to the Labor

22  and Workforce Development Agency ("LWDA") pursuant to California Labor Code § 2699(i); (f)

23  incentive awards of $10,000 each to Plaintiffs Benitez and Morales and $20,000 to Plaintiff

24  Villarreal;[1] and (g) the remaining net settlement amount, estimated to be $31,934.33, to be

25  distributed to the class members.[2]  (Doc. 37-1 at 44–47.)  The net settlement amount will be

26

27  [1] The additional $10,000 incentive award to Plaintiff Villareal is intended to resolve his individual FMLA claim.  (*See* Doc. 37-3 at 8.)

28  [2] Putative class members who were already paid from Defendants' individual settlement program more than pro rata share of this settlement will not receive an additional payment from the net settlement fund.  (*See* Doc. 37 at 47.)

1    distributed to class members based on the number of weeks worked for each class member divided

2    by the total weeks worked by all class members during the class period.  (*Id.* at 47.)  The proposed

3    settlement provides that the settlement amount is non-reversionary: if any checks remain uncashed

4    after 90 days, those amounts will be donated to the *cy pres* beneficiary Valley Children's Hospital.

5    (Doc. 37-1 at 54.)

6    **C.    Preliminary Approval, Notice to the Class, and the Present Motions**

7            By its order entered on January 21, 2020, the Court provisionally certified the proposed

8    class and granted preliminary approval of the settlement.  (Doc. 35.)  The settlement administrator,

9    Simpluris, sent 234 settlement notices to putative class members identified by Defendants on

10   February 10, 2020.  (Doc. 37 at 14.)  Only five notices were returned as undeliverable, and no

11   putative class member opted-out, objected, or disputed their award.  (*Id.*)  On April 22, 2020,

12   Plaintiffs filed the motions for final approval, (Doc. 37) and for attorneys' fees, (Doc. 38).

13   Defendants have not filed an opposition to either motion, and the time to do so has expired.

14                           **III.    LEGAL STANDARDS**

15           Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a

16   certified class may be settled, voluntarily dismissed, or compromised only with the court's

17   approval."  "The Ninth Circuit has declared that a strong judicial policy favors settlement of class

18   actions."  *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 658 (E.D. Cal. 2008) (citation omitted).

19           "Procedurally, the approval of a class action settlement takes place in two stages."  *Id.* "In

20   the first stage of the approval process, 'the court preliminarily approve[s] the [s]ettlement pending

21   a fairness hearing, temporarily certifie[s] the [c]lass . . . , and authorize[s] notice to be given to the

22   [c]lass.'"  *Id.* at 658–59 (citation omitted).  The second stage—final approval—occurs "after notice

23   is given to putative class members."  *Id.*  At this stage, "the court . . . entertain[s] any . . . objections"

24   from the putative class members as to "(1) the treatment of th[e] litigation as a class action and/or

25   (2) the terms of the settlement."  *Id.*  The district court then "make[s] a final determination as to

26   whether the parties should be allowed to settle the class action pursuant to the terms agreed upon."

27   *Id.* (citation omitted).

28

                                             3

1    The present final approval stage requires two separate inquiries "where, as here, 'parties

2    reach a settlement agreement prior to class certification.'" *Alberto*, 2008 WL 4891201, at *2

3    (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003)).  Specifically, "courts must

4    peruse the proposed compromise to ratify both [1] the propriety of the certification and [2] the

5    fairness of the settlement." *Id.*

6                          **IV.    FINAL CLASS CERTIFICATION**

7    **A.    Overview of Analysis**

8    "The class action is 'an exception to the usual rule that litigation is conducted by and on

9    behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348

10   (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)).  "To be eligible for

11   certification, the proposed class must be 'precise, objective, and presently ascertainable.'" *Pointer*

12   *v. Bank of Am. Nat'l Ass'n*, No. 2:14-cv-00525-KJM-CKD, 2016 WL 696582, at *3 (E.D. Cal.

13   Feb. 22, 2016) (citation omitted).

14   Further, "[i]n order to justify" use of the class action device, "'a class representative must

15   be part of the class and possess the same interest and suffer the same injury as the class members.'"

16   *Wal-Mart Stores, Inc.*, 564 U.S. at 348–49 (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*,

17   431 U.S. 395, 403 (1977)).  Federal Rule of Civil Procedure 23(a) "ensures that the named

18   plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Id.* at

19   349. Rule 23(a) provides "four threshold requirements applicable to all class actions": (1)

20   "numerosity (a 'class [so large] that joinder of all members is impracticable')," (2) "commonality

21   ('questions of law or fact common to the class')," (3) "typicality (named parties' claims or defenses

22   'are typical . . . of the class')," and (4) "adequacy of representation (representatives 'will fairly and

23   adequately protect the interests of the class')." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,

24   613 (1997) (quoting Fed. R. Civ. P. 23(a)).  "In addition to satisfying Rule 23(a)'s prerequisites,

25   parties seeking class certification must show that the action is maintainable under Rule 23(b)(1),

26   (2), or (3)." *Id.* at 614.  "Although the parties in this case have stipulated a settlement class exists"

27   solely for purposes of settlement, "the court must nevertheless undertake the Rule 23 inquiry

28   independently." *Pointer*, 2016 WL 696582, at *3 (citation omitted).

Here, the Court previously found that the requirements pertaining to the existence of a class—commonality, typicality, and adequacy of representation—were satisfied, (*see* Doc. 35 at 7–10), and the parties have not apprised the Court of any changed circumstance that would negate that finding.  Consequently, the Court finds that the requirements of commonality, typicality, and adequacy of representation are all satisfied in this case.

**B.      Numerosity**

"To meet the numerosity requirement of Rule 23(a), a class must be 'so numerous that joinder of all members is impracticable.'"  *Scott-George v. PVH Corp.*, No. 2:13-cv-00441-TLN-DAD, 2015 WL 7353928, at *3 (E.D. Cal. Nov. 20, 2015) (quoting Fed. R. Civ. P. 23(a)(1)).  This impracticability requirement "does not equate to impossible."  *Campbell v. PricewaterhouseCoopers, LLP*, 253 F.R.D. 586, 594 (E.D. Cal. 2008) (citations omitted).  Instead, this requirement "means only that the court must find that the difficulty or inconvenience of joining all members of the class makes class litigation desirable."  *McKeen-Chaplin v. Provident Sav. Bank, FSB*, No. 2:12–cv–03035–GEB–JFM, 2013 WL 4056285, at *4 (E.D. Cal. Aug. 12, 2013) (citation omitted).

Here, the proposed class includes all employees of Defendant Perfection Pet Foods, LLC during the applicable class period.  (Doc. 37 at 8.)  Plaintiffs state that the proposed class includes 234 total participating members.  (*Id.* at 26.)  The Court finds that this potential class size satisfies the numerosity requirement.  *See, e.g.*, *Collins v. Cargill Meat Sols. Corp.*, 274 F.R.D. 294, 300 (E.D. Cal. 2011) ("Courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members.").

**C.      The Requirements of Rule 23(b)(3)**

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).  "[A] class must meet two requirements beyond the Rule 23(a) prerequisites" to "qualify for certification under Rule 23(b)(3)": (1) "[c]ommon questions must 'predominate over any questions affecting only individual members,'" and (2) "class resolution

1  must be 'superior to the other available methods for the fair and efficient adjudication of the

2  controversy.'" *Id.* (quoting Fed. R. Civ. P. 23(b)(3)).

3        1.  <u>Predominance</u>

4      "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently

5  cohesive to warrant adjudication by representation." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

6  1021 (9th Cir. 1998) (quoting *Amchem Prods., Inc.*, 521 U.S. at 623). "Implicit in the satisfaction

7  of the predominance test is the notion that the adjudication of common issues will help achieve

8  judicial economy." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001)

9  (quoting *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1233 (9th Cir. 1996)). "While this

10  requirement is similar to the Rule 23(a)(2) commonality requirement, the standard is much higher

11  at this stage of the analysis." *Mitchinson v. Love's Travel Stops & Country Stores, Inc.*, No. 1:15-

12  cv-01474-DAD-BAM, 2016 WL 7426115, at *6 (E.D. Cal. Dec. 22, 2016) (citations omitted); *see,*

13  *e.g.*, *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017).

14      Here, the Court previously found that the predominance requirement was met because class

15  members were uniformly subject to Defendants' alleged unlawful practices and Labor Code

16  violations, and were able to seek the same form of damages and penalties. (*See* Doc. 35 at 11.)

17  For the same reason, the Court finds the predominance requirement is met at the final approval

18  stage. *See Palacios v. Penny Newman Grain*, No. 1:14-cv-01804, 2015 WL 4078135, at *5–6

19  (E.D. Cal. July 6, 2015); *see also Clesceri v. Beach City Investigations & Protective Servs., Inc.*,

20  No. CV-10-3873-JST RZX, 2011 WL 320998, at *7 (C.D. Cal. Jan. 27, 2011).

21        2.  <u>Superiority</u>

22      The Court also previously found that the second requirement—superiority—was satisfied.,

23  (*see* Doc. 35 at 12), and the Court sees no reason to depart from that finding at the final certification

24  stage. *See Palacios*, 2015 WL 4078135, at *6; *Clesceri*, 2011 WL 320998, at *7. As such, the

25  Court finds that the superiority requirement is satisfied here.

26      In summary, the Court finds that the requirements of Rule 23 are satisfied in this case.

27  Accordingly, the Court shall grant final class certification.

28

## V.      FINAL SETTLEMENT APPROVAL

**A.      Overview of Analysis**

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008) (citation omitted).

In determining whether a settlement is "fundamentally fair, adequate, and reasonable," the district court must "balance[e] . . . several factors which may include, among others, some or all of" the following: (1) "the strength of plaintiffs' case," (2) "the risk, expense, complexity, and likely duration of further litigation," (3) "the risk of maintaining class action status throughout the trial," (4) "the amount offered in settlement," (5) "the extent of discovery completed," (6) "the stage of the proceedings," (7) "the experience and views of counsel," (8) "the presence of a governmental participant," and (9) "the reaction of the class members to the proposed settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (citation omitted). "Ultimately, the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice*, 688 F.2d at 625 (citation omitted); *see also Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("[D]istrict courts have wide discretion in assessing the weight and applicability of each factor." (citation omitted)).

**B.      Adequacy of Notice**

As an initial matter, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. "[T]he class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice*, 688 F.2d at 624.

At the preliminary approval stage, the Court approved the parties' proposed plan for providing notice to potential class members. (*See* Doc. 35 at 23.) Following preliminary approval, Simpluris sent notices to each of the potential class members by first class mail after performing

1   address trace searches and collecting address data from various sources.  (*See* Doc. 37 at 20.)  Of

2   the 234 potential class members, only five notices were returned as undeliverable.  (*Id.*)

3          Courts have found that similar efforts by settlement administrators to provide notices to

4   potential class members were sufficient at the final approval stage.  *See, e.g.*, *Garcia v. City of*

5   *King City*, Case No. 14-cv-01126-BLF, 2017 WL 363257, at *5 (N.D. Cal. Jan. 25, 2017) (finding

6   that notice was adequate where the settlement administrator made multiple attempts to provide

7   notice to all 241 potential class members, but "35 notices were" nonetheless "returned as

8   undeliverable from all the mailed-out notices"); *Hawthorne v. Umpqua Bank*, Case No. 11–cv–

9   06700–JST, 2015 WL 1927342, at *2 (N.D. Cal. Apr. 28, 2015); *Ontiveros v. Zamora*, 303 F.R.D.

10  356, 367 (E.D. Cal. 2014).  The Court agrees with these decisions and finds that Simpluris's efforts

11  to provide notice to each potential class member were sufficient.  The Court is also persuaded that

12  further efforts are unlikely to successfully provide notice to the remaining five class members,

13  considering the numerous different methods Simpluris used to find all possible addresses for each

14  class member.  *See, e.g.*, *Quevedo v. Dole Food Co.*, No. 1:01-CV-6443 OWW SMS, 2005 WL

15  3783455, at *10 (E.D. Cal. Apr. 18, 2005).  Thus, the Court finds that notice was adequate.[3]

16  **C.    Strength of Plaintiffs' Case**

17          "An important consideration is the strength of the plaintiff's case on the merits balanced

18  against the amount offered in the settlement."  *Ontiveros*, 303 F.R.D. at 369 (citing *Nat'l Rural*

19  *Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)).  "[T]he court is to

20  evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those

21  considerations on the parties' decisions to reach these agreements."  *Adoma v. Univ. of Phoenix,*

22  *Inc.*, 913 F. Supp. 2d 964, 975 (E.D. Cal. 2012).

23          Here, Plaintiffs' counsel "maintain[s] that there is substantial evidence from which the trier

24  of fact could rule in Plaintiffs' favor on the merits of Plaintiff[s'] class claims[.]"  (Doc. 37 at 22.)

25  However, "conflicting caselaw regarding some of the derivative claims like the wage statement

26

27  _____

28  [3] The Court previously found that the contents of the notice met the requirements of Federal Rule of Civil Procedure 23(c)(2)(B), in that it fully and accurately informed the putative class members of all required information.  (Doc. 35 at 24.)

and waiting time penalty claims arguably renders them unrecoverable." (*Id.*) Further, Plaintiffs face the risk of reduced penalties under PAGA pursuant to pertinent case law. (*Id.*)

Based on the available information in the record, the Court finds that Plaintiffs' case likely has some merit, but that it faces weaknesses that are inherent in this type of case. The Court therefore finds that the first consideration relating to the strength of Plaintiffs' case weighs in favor of the final approval of the settlement.

**D.     Risks and Expense of Further Litigation**

"Another relevant factor is the risk of continued litigation against the certainty and immediacy of recovery from the [s]ettlement." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010) (citation omitted). "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Id.* (alteration in original) (quoting *DIRECTV, Inc.*, 221 F.R.D. at 526).

In this case, the risk and expense of continued litigation is obvious. Class counsel noted that, absent settlement, the case would need to go to trial as a class action in this Court and also go to parallel arbitration for other claims, and counsel "estimate[s] that fees and costs would easily exceed $1,500,000.00, and could be *substantially* higher depending on the level of coordination between this action and the arbitration." (Doc. 37 at 24) (emphasis in original). The apparent risk and expense of further litigation means that this factor clearly weighs in favor of approving the settlement. *See, e.g.*, *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 446 (E.D. Cal. 2013).

**E.     Risk of Maintaining Class Action Status Throughout Trial**

The Court is not aware of any risks to the class maintaining its class-action status throughout trial. This factor is therefore neutral. *See, e.g.*, *id.* ("Because the Court is not aware of any risks to maintaining class-action status throughout trial, this factor is neutral." (citations omitted)).

**F.     Fairness of Settlement Amount**

The next factor looks to the substantive fairness of the settlement amount. "In assessing the consideration obtained by the class members in a class action settlement, it is the complete package taken as a whole, rather than the individual component parts, that must be examined for

1  overall fairness." *Ontiveros*, 303 F.R.D. at 370 (citation omitted).  "It is well-settled law that a

2  proposed settlement may be acceptable even though it amounts to only a fraction of the potential

3  recovery that might be available to the class members at trial." *Ontiveros*, 303 F.R.D. at 370

4  (quoting *DIRECTV*, 221 F.R.D. at 527).

5        Here, the total class settlement amount is $650,000.00 and the net distribution fund for

6  payment to the class members is $359,334.33.  (Doc. 37 at 26.)  From this amount, "the average

7  estimated award" for each class member is $1,484.33.  (*Id.*)  Plaintiffs represent the total settlement

8  fund of $650,000 constitutes a 30 percent recovery of the maximum potential damages on

9  Plaintiffs' primary claims.  (Doc. 37 at 21.)  After accounting for PAGA penalties, the recovery

10  rate is approximately 13 percent.  (*Id.*)  This recovery rate is consistent with percentage recoveries

11  California district court have found to be reasonable.  *See, e.g., Glass v. UBS Fin. Servs., Inc.*, No.

12  C-06-4068, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007).

13        Although a larger award is "theoretically possible, 'the very essence of a settlement is

14  compromise, a yielding of absolutes and an abandoning of highest hopes.'"  *Barbosa*, 297 F.R.D.

15  at 447 (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)).  Given the

16  claims at issue in this case and the size of the participating class, the Court finds that this settlement

17  amount is acceptable for purposes of the instant analysis and that the settlement is substantively

18  fair.[4]

19  **G.    Extent of Discovery Completed and Stage of Proceedings**

20        As to the factors pertaining to the extent of discovery completed and the stage of

21  proceedings, "[a] settlement following sufficient discovery and genuine arms-length negotiation

22  is presumed fair."  *Adoma*, 913 F. Supp. 2d at 977 (quoting *DIRECTV, Inc.*, 221 F.R.D. at 528).

23  "A court is more likely to approve a settlement if most of the discovery is completed because it

24

25

---

26  [4] As to the claims class members are held to release in exchange for the settlement amount, the Court previously found the release provision was substantively fair as it "appropriately tracks the allegations in the FAC[,]" (*id.* at 22). Nothing has changed regarding the substantive fairness of the release, and the parties have given no further information

27  or advised the Court of any changed circumstances regarding the release.  Thus, for the same reasons as at the preliminary approval stage, the Court finds the release of claims is substantively fair at the final approval

28  stage.  *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010); *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D 593, 613 (E.D. Cal. May 31, 2016).

1    suggests that the parties arrived at a compromise based on a full understanding of the legal and

2    factual issues surrounding the case." *Id.* (quoting *DIRECTV, Inc.*, 221 F.R.D. at 527).

3        Plaintiffs' counsel states that the parties "engaged in an informal information exchange and

4    discovery to enable both sides to assess the claims and potential defenses in this action." (Doc. 37

5    at 27.)  Plaintiffs' counsel states that the parties engaged in extensive, arms-length settlement

6    discussions, conducted thorough investigations of the claims, participated in multiple mediations,

7    and that "[u]ltimately, facilitated by mediator [Paul] Grossman, the Parties used this information

8    and discovery to fairly resolve the litigation."  (*See id.* at 27–28.)

9        Based on these representations, the Court finds that the parties engaged in sufficient

10   discovery to permit genuine arms-length settlement negotiations, and that the settlement was thus

11   procedurally fair.  *See, e.g.*, *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal.

12   2013) ("While the parties did not fully complete discovery prior to settlement negotiations, but

13   rather engaged in a process of informal discovery, approval of a class action settlement is proper

14   as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of

15   their cases." (citing *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal.

16   2007)).

17   **H.    Experience and Views of Counsel**

18       "In considering the adequacy of the terms of a settlement, the trial court is entitled to, and

19   should, rely upon the judgment of experienced counsel for the parties." *Barbosa*, 297 F.R.D. at

20   447 (citation omitted).  "Great weight is accorded to the recommendation of counsel, who are the

21   most closely acquainted with the facts of the underlying litigation."  *Adoma*, 913 F. Supp. 2d. at

22   977 (citation omitted).

23       Here, the experience and views of counsel weigh in favor of approving the settlement.

24   Plaintiffs' counsel are experienced attorneys who have represented numerous individuals and

25   classes in similar cases.  (*See* Doc. 37-1 at 2.)  Further, Plaintiffs' counsel states that they "believe[]

26   this Settlement will provide a substantial benefit to the Class."  (Doc. 37 at 29.)  Given the

27   experience of class counsel and their favorable view of the settlement, the Court finds that this

28   factor weighs in favor of approval of the settlement.

**I.     Presence of a Governmental Participant**

No governmental actor has participated in this litigation.  Nonetheless, the FAC includes allegations under PAGA.  (Doc. 37 at 8; *see* Doc. 32.)  "Pursuant to . . . PAGA . . . , Cal. Lab. Code § 2699.3, California granted Plaintiffs the right to stand in the shoes of the state of California to enforce these claims on behalf of the state and employees."  *Vasquez*, 266 F.R.D. at 490. Consequently, "Plaintiffs stand as a proxy for the State," *id.*, and $22,500 of the final settlement amount will be paid to the State of California, (Doc. 37 at 15).  As the state of California will receive a portion of the settlement amount, this factor weighs in favor of approval of the settlement.[5]  *See, e.g.*, *Ontiveros*, 303 F.R.D. at 371 (finding that this factor weighed in favor of approval where the plaintiff would share a portion of the settlement amount with the State pursuant to PAGA); *Adoma*, 913 F. Supp. 2d at 977 (same).

**J.     Reaction of the Class Members to the Proposed Settlement**

"The reactions of the members of a class to a proposed settlement is a proper consideration for the trial court."  *Vasquez*, 266 F.R.D. at 490 (citation omitted).  "Where a settlement agreement enjoys overwhelming support from the class, this lends weight to a finding that the settlement agreement is fair, adequate, and reasonable."  *Barbosa*, 297 F.R.D. at 448 (citation omitted). Indeed, "[i]t is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members."  *DIRECTV, Inc.*, 221 F.R.D. at 529 (collecting cases).

Here, the potential class includes 234 members and none of those individuals opted out or objected to the proposed settlement.  (Doc. 37 at 14.)  Further, no participating class members submitted an intent to appear at a final fairness hearing.  Given the overall lack of opposition to the settlement from the class members, the Court finds that this factor weighs in favor of approval of the settlement.  *See DIRECTV, Inc.*, 221 F.R.D. at 529.

---

[5] The Court previously found that the PAGA penalties provided for in the settlement were fair and adequate.  (Doc. 35 at 16.)  The parties have not advised the Court of any changed circumstances that would affect the Court's prior analysis.  Further, Plaintiffs served the settlement agreement on the LWDA as required by statute, (Doc. 37 at 15 n.8), and LWDA has not objected to the terms of the settlement including the PAGA penalties.  Thus, the Court finds the PAGA penalties provided in the settlement agreement are fair and adequate.  *See* Cal. Lab. Code § 2699(l)(2); *O'Connor v. Uber Techs., Inc.*, No. 3:13-cv-03826-EMC (N.D. Cal. Jul. 29, 2016).

1    In summary, the pertinent factors weigh in favor of the approval of the proposed settlement.

2    Accordingly, the Court finds that the settlement is fair, adequate, and reasonable under Rule 23(e).

3                                    **VI.    ATTORNEYS' FEES**

4    Class counsel also moves for approval of their attorneys' fees.  (*See* Doc. 38.)  For the

5    reasons that follow, the Court approves class counsel's requested fees.

6    **A.    Standard**

7    Federal Rule of Civil Procedure 23(h) states that, "[i]n a certified class action, the court

8    may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the

9    parties' agreement."

10    When a negotiated class action settlement includes an award of attorney's fees, the fee

11    award must be evaluated in the overall context of the settlement.  *Knisley v. Network Assocs.*, 312

12    F.3d 1123, 1126 (9th Cir. 2002).  At the same time, the court "ha[s] an independent obligation to

13    ensure that the award, like the settlement itself, is reasonable, even if the parties have already

14    agreed to an amount."  *Bluetooth*, 654 F.3d at 941; *see also Zucker v. Occidental Petroleum Corp.*,

15    192 F.3d 1323, 1328–29 (9th Cir. 1999).

16    As Plaintiffs' claims are based on state law, California law governs the award and

17    calculation of attorney's fees.  *See Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016,

18    1024 (9th Cir. 2003).  The California Supreme Court has "held that courts have discretion to choose

19    among two different methods for calculating a reasonable attorney's fee award," the percentage-

20    of-the-fund approach and the lodestar method.  *Spann*, 211 F. Supp. 3d at 1262.  The Ninth Circuit

21    has similarly approved both the percentage approach and the lodestar method for determining

22    attorney's fees in cases where the attorney's fee award is taken from the common fund set aside

23    for the entire settlement..  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002)

24    (citation omitted).  The district court retains discretion in common fund cases to choose either

25    method.  *Id.*; *Vu v. Fashion Inst. of Design & Merch.*, No. CV 14-08822 SJO (EX), 2016 WL

26    6211308, at *5 (C.D. Cal. Mar. 22, 2016).  Under either approach, "[r]easonableness is the goal,

27    and mechanical or formulaic application of either method, where it yields an unreasonable result,

28    can be an abuse of discretion."  *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997,

1   1007 (9th Cir. 2002).  The Ninth Circuit has recommended that district courts apply one method

2   but cross-check the appropriateness of the amount by employing the other as well.  *See In re*

3   *Bluetooth*, 654 F.3d at 944.

4        As the present situation involves a common fund arrangement, (*see, e.g.*, Doc. 38 at 17),

5   the Court will apply the percentage method, *see, e.g.*, *Spann*, 211 F. Supp. 3d at 1262, and exercise

6   its discretion to cross-check the result of the percentage method analysis by a lodestar-multiplier

7   calculation.  *See, e.g.*, *Mitchinson v. Love's Travel Stops & Country Stores, Inc.*, No. 1:15-cv-

8   01474-DAD-BAM, 2016 WL 7426115, at *9 (E.D. Cal. Dec. 22, 2016).

9   **B.**    **Percentage Method**

10       Under the percentage of the fund method, the court may award class counsel a given

11  percentage of the common fund recovered for the class.  *Id.*  In the Ninth Circuit, a twenty-five

12  percent of the common fund award is the "benchmark" amount of attorney's fees, but courts may

13  adjust this figure upwards or downwards if the record shows "special circumstances justifying a

14  departure."  *Id.* (quoting *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311

15  (9th Cir. 1990)).  The typical range of acceptable attorney's fees in the Ninth Circuit is 20% to 33

16  .33% of the total settlement value.  *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).

17       "In assessing whether the percentage requested is fair and reasonable" under the percentage

18  method, "courts generally consider the following factors": (1) "the results achieved," (2) "the risk

19  of litigation," (3) "the skill required," (4) "the quality of work performed," (5) "the contingent

20  nature of the fee and the financial burden," and (6) "the awards made in similar cases."  *Barbosa*,

21  297 F.R.D. at 449.

22       In this case, the pertinent factors weigh in favor of approving the requested attorneys' fees.

23  As the Court previously found, counsel achieved a favorable result for the class, there was

24  substantial risk associated with further litigation, and class counsel has sufficient relevant

25  experience and they utilized that experience to obtain a positive result in this case.  Regarding the

26  nature of the fee, counsel took risk in pursuing this litigation on a contingency fee basis, which

27  certainly weighs in favor of approving the requested fees.  *See, e.g.*, *Barbosa*, 297 F.R.D. at 449.

28

1    Finally, the requested attorneys' fees amount of $216,666.67 constitutes 33.33% of the

2   total class settlement amount of $650,000.00.  (*See* Doc. 38 at 9.)  This percentage exceeds the

3   "benchmark" rate but is still within the acceptable range of awards.  *See, e.g.*, *In re Consumer*

4   *Privacy Cases*, 175 Cal. App. 4th 545, 557 n.13 (2009).  Indeed, courts have approved similar

5   percentage awards for attorneys' fees in analogous cases.  *See, e.g.*, *Deaver v. Compass Bank*, Case

6   No. 13-cv-00222-JSC, 2015 WL 8526982, at *11–12 (N.D. Cal. Dec. 11, 2015) (33%); *Willner v.*

7   *Manpower Inc.*, Case No. 11–cv–02846–JST, 2015 WL 3863625, at *7 (N.D. Cal. June 22, 2015)

8   (30%); *Ching v. Siemens Indus., Inc.*, Case No. 11–cv–04838–MEJ, 2014 WL 2926210, at *8

9   (N.D. Cal. June 27, 2014) (30%); *Adoma*, 913 F. Supp. 2d at 983 (29%); *Collins v. Cargill Meat*

10  *Sols. Corp.*, No. 1:10–cv–00500 OWW MJS, 2011 WL 2580321, at *11 (E.D. Cal. June 28, 2011)

11  (31.7%).  *See generally Barbosa*, 297 F.R.D. at 449 ("[W]here recovery is uncertain, an award of

12  one-third of the common fund as attorneys' fees has been found to be appropriate." (collecting

13  cases)); *see also In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("This

14  court's review of recent reported cases discloses that nearly all common fund awards range around

15  30% even after thorough application of either the lodestar or twelve-factor method.").

16    The Court thus finds that each of the pertinent considerations weigh in favor of approving

17  the requested attorneys' fees under the percentage approach.[6]  The Court proceeds to cross-check

18  this result with the lodestar approach.

19  **C.    Lodestar Cross-Check**

20    As noted above, the "lodestar" figure consists of "the number of hours reasonably expended

21  multiplied by the reasonable hourly rate."  *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000).

22  "Because time records are not required under California law . . . , there is no required level of detail

23

24

---

25  [6] The settlement agreement also includes a "clear sailing" provision, in which Defendants agree not to contest the class
    counsel's award of attorney's fees or costs.  (Doc. 37-1 at 45.)  The existence of a clear sailing provision is not

26  necessarily fatal to final approval, but "when confronted with a clear sailing provision, the district court has a
    heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit

27  to the class."  *In re Bluetooth*, 654 F.3d at 948 (citations omitted).  Here, because the percentage of the fund requested
    is within the acceptable range outlined by the Ninth Circuit and, as explained below, the amount falls well below the

28  adjusted lodestar amount, the Court is satisfied that the provision does not betray the class's interests.  *See In re*
    *Activision*, 723 F. Supp. at 1377.

1   that counsel must achieve." *Syers Props. III, Inc. v. Rankin*, 226 Cal. App. 4th 691, 699 (2014)

2   (alteration in original) (quoting *PLCM Grp.*, 22 Cal. 4th at 1098).

3          Regarding the reasonable rate determination, "[t]here is no requirement that the reasonable

4   market rate mirror the *actual* rate billed." *Rankin*, 226 Cal. App. 4th at 463.   Instead, "[t]he

5   reasonable hourly rate is that prevailing in the community for similar work." *PLCM Grp.*, 22 Cal.

6   4th at 1095 (citations omitted).   "Generally, the courts will look to equally difficult or complex

7   types of litigation to determine which market rates to apply." *Rankin*, 226 Cal. App. 4th at 463

8   (citation omitted).

9          "In the Fresno Division of the Eastern District of California, across a variety of types of

10  litigation generally, attorneys with . . . twenty or more years of experience are awarded $325.00 to

11  $400.00 per hour, attorneys with ten to twenty years of experience are awarded $250.00 to $350.00

12  per hour, attorneys with five to ten years of experience are awarded $225.00 to $300.00 per hour,

13  and less than $200.00 per hour for attorneys with less than five years of experience." *Atayde v.*

14  *Napa State Hospital*, Case No. 1:16-cv-00398-DAD-SAB, 2020 WL 2770061, at *13 (E.D. Cal.

15  May 28, 2020) (collecting cases); *see also Barkett v. Sentosa Props. LLC*, No. 1:14–CV–01698–

16  LJO, 2015 WL 5797828, at *5 (E.D. Cal. Sept. 30, 2015).   Within this range, "the highest rates

17  [are] generally reserved for those attorneys who are regarded as competent and reputable and who

18  possess in excess of 20 years of experience." *Id.* (quoting *Silvester*, 2014 WL 5797828, at *4).

19  Finally, "[w]here the lodestar method is used as a cross-check to the percentage method, it can be

20  performed with a less exhaustive cataloguing and review of counsel's hours," and can be a rough

21  estimate of the lodestar value sufficient simply to allow the Court to compare it to the percentage

22  amount.  *See Barbosa*, 297 F.R.D. at 451 (citations omitted).

23         As to the number of hours class counsel spent on this matter, counsel represent that seven

24  attorneys spent a total of approximately 535.1 hours litigating this case.   (*See* Doc. 38 at 26; Doc.

25  38-1.)   Class counsel states that the seven attorneys expended the following time on the case: (1)

26  Richard Hoyer—45.78 hours; (2) Ryan Hicks—221.08 hours; (3) Jennifer McGuire—79.27 hours;

27  (4) Sean McHenry—24.92 hours; (5) Brett Watson—115.83 hours; (6) Nicole Gage—10.02 hours;

28  and (7) Walter Haines—38.2 hours.  (Doc. 38-1 at 20.)  This evidence is sufficient to support class

16

1  counsel's request as to the total number of hours based on pertinent California case law and the

2  nature of this analysis as only a cross-check.  *See, e.g.*, *Rankin*, 226 Cal. App. 4th at 699.

3  Additionally, the Court is not aware of any information indicating that the number of requested

4  hours is unreasonable.  The Court therefore finds that the number of hours requested is reasonable.

5          The requested hourly rates, however, are unreasonable without the application of a

6  multiplier.  Class counsel requests the following rates: (1) Richard Hoyer, an attorney with

7  experience since 1990—$725; (2) Ryan Hicks, an attorney with experience since 2008—$525; (3)

8  Jennifer McGuire, an attorney with experience since 2012—$350; (4) Sean McHenry, an attorney

9  with experience since 2011—$350 (5) Brett Watson, an attorney with experience since 2013—

10  $350; (6) Nicole Gage, an attorney with experience since 2017—$250; and (7) Walter Haines, an

11  attorney with experience since 1976—$675.  (Doc. 38 at 26; *see also* Doc. 38-1 at 14.)  These

12  hourly rates exceed the permissible ranges of rates for the Fresno Division of this District.  *See,*

13  *e.g., Barkett*, 2015 WL 5797828, at *5 (E.D. Cal. Sept. 30, 2015).  Ms. McGuire, Mr. McHenry,

14  and Mr. Watson have experience of a little under a decade, so their maximum permissible rate

15  (approximately $300) is about 15% less than their requested fee of $350.  *See Atayde*, 2020 WL

16  2770061, at *13.  Ms. Gage has approximately three years of experience, so her maximum

17  permissible rate (approximately $200) is approximately 20% less than her requested fee of $250.

18  *See id.*  Mr. Hicks has just over a decade of experience, so his maximum permissible rate

19  (approximately $350) is approximately 33.33% less than his requested fee of $525.  *See id.*  Finally,

20  Mr. Haines and Mr. Hoyer have over twenty years of experience each, so their maximum

21  permissible rate (approximately $400) is about 45% and 40% less, respectively, than their

22  requested rates.  *See id.*

23          Turning to the lodestar calculation, each attorney's lodestar figure is as follows: (1) Mr.

24  Hoyer—$18,312 (45.78 hours multiplied by a rate of $400 per hour); (2) Mr. Hicks—$77,378

25  (221.08 hours multiplied by a rate of $350 per hour); (3) Ms. McGuire—$23,781 (79.27 hours

26  multiplied by a rate of $300 per hour); (4) Mr. McHenry—$7,476 (24.92 hours multiplied by a

27  rate of $300 per hour); (5) Mr. Watson—$34,749 (115.83 hours multiplied by a rate of $300 per

28  hour); (6) Ms. Gage—$2,004 (10.02 hours multiplied by a rate of $200 per hour); and (7) Mr.

Haines—$15,280 (38.2 hours multiplied by a rate of $400 per hour).  These calculations result in a total lodestar figure of $178,980.

After determining the lodestar amount, "[t]he lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided."  *PLCM Grp.*, 22 Cal. 4th at 1095.  These pertinent factors include "the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case."  *Id.* (quoting *Melnyk v. Robledo*, 64 Cal. App. 3d 618, 623–24 (1976)).  As to the types of permissible multipliers, California courts have noted that lodestar "[m]ultipliers can range from 2 to 4 or even higher."  *Wershba v. Apple Comput., Inc.*, 91 Cal. App. 4th 224, 255 (2001) (citations omitted).

Here, an upward adjustment is appropriate.  Given the relatively early settlement of this case, class counsel expended a considerable amount of time litigating this action.  (*See, e.g.*, Doc. 38 at 26.)  Additionally, as noted above, class counsel was able to secure a positive outcome for the class.  Finally, and importantly, class counsel accepted substantial risk in litigating this case on a contingency fee basis.  These considerations weigh strongly in favor of applying a multiplier to the lodestar figure.  *See Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir. 2016).

The application of a relatively modest multiplier of two results in an adjusted lodestar of $357,960.  This adjusted lodestar figure well exceeds Plaintiffs' counsel's requested fee award of $216,666.67, which the Court found was supported by the percentage method.  As the lodestar calculation results in a figure that well exceeds the result of the percentage method, the Court finds that the lodestar cross-check confirms that class counsel's fee request is reasonable.  *See, e.g.*, *Ching v. Siemens Indus., Inc.*, Case No. 11–cv–04838–MEJ, 2014 WL 2926210, at *8 (N.D. Cal. June 27, 2014) (finding that the lodestar cross-check supported awarding the requested rates where it exceeded the result of the percentage method).

In summary, the percentage method indicates that class counsel's requested fees are reasonable.  Additionally, the lodestar cross-check supports this result.  The Court therefore finds that Plaintiffs' requested attorneys' fees are reasonable.

### VII.   COSTS

Plaintiffs also request that the Court award costs.  (*See, e.g.*, Doc. 38 at 2.)  "[T]he award of costs is governed by federal law under Rule 54(d)" as "a general proposition."  *In re Merrill Lynch Relocation Mgmt., Inc.*, 812 F.2d 1116, 1120 n.2 (9th Cir. 1987).  28 U.S.C. § 1920 "define[s] the full extent of a federal court's power to shift litigation costs absent express statutory authority."[7]  *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 579 (9th Cir. 2010) (citation omitted).  The costs that are taxable under Section 1920 "are limited to relatively minor, incidental expenses," including "clerk fees, court reporter fees, expenses for printing and witnesses, expenses for exemplification and copies, docket fees, and compensation of court-appointed experts."  *Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997, 2006 (2012).

Here, class counsel requests total costs in the amount of $17,703.75.  (*See, e.g.*, Doc. 38 at 2.)  Plaintiffs' counsel included an itemization of costs, which includes, for example, mediator fees, filing fees, and service costs.  (*Id.* at 31.)  These costs are properly recoverable by class counsel.  *See, e.g.*, *Taniguchi*, 132 S. Ct. at 2006; *McCarty v. Humphrey*, No. 2:13-cv-00431-KJM-AC, 2016 WL 4899194, at *6 (E.D. Cal. Sept. 15, 2016) (awarding "costs for filing fees, expert fees, process server fees, deposition fees, and online research fees"); *Rodriguez v. D.M. Camp & Sons*, No. 1:09–cv–00700–AWI–JLT, 2013 WL 2146927, at *16 (E.D. Cal. May 15, 2013); *see also Torchia v. W.W. Grainger, Inc.*, 304 F.R.D. 256, 278 (E.D. Cal. 2014) ("cost[s] including filing fees, mediator fees . . . , ground transportation, copy charges, computer research, and database expert fees . . . are routinely reimbursed in these types of cases.") (citation and internal quotation marks omitted).  As such, the Court finds that class counsel's requested costs of $17,703.75 are reasonable.

---

[7] Federal Rule of Civil Procedure 54(d)(1) provides that, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party."  Rule 54 provides "a decided preference for the award of costs to the prevailing party."  *Taniguchi*, 132 S. Ct. at 2005–06 (citation omitted).  Nonetheless, "the 'discretion granted by Rule 54(d) is not a power to evade' the specific categories of costs set forth by Congress."  *Id.* (quoting *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 438 (1987)).  Instead, Rule 54(d) "is solely a power to decline to tax, as costs, the items enumerated in § 1920."  *Id.* (citation omitted).

1

## VIII.   SERVICE PAYMENTS

2      Finally, Plaintiffs Benitez and Morales each request a service payment of $10,000 and

3   Plaintiff Villareal requests a service payment of $20,000.[8]  (Doc. 38 at 31.)  Of course, "named

4   plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for

5   reasonable incentive payments." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).  "Courts

6   routinely approve incentive awards to compensate named plaintiffs for the services they provide

7   and the risks they incurred during the course of the class action litigation." *Barbosa*, 297 F.R.D.

8   at 454 (citation omitted).  Courts "assess whether the requested incentive payment is excessive by

9   balancing," *Dearaujo*, 2016 WL 3549473, at *11, the following non-exhaustive list of

10   considerations: (1) "the actions the plaintiff has taken to protect the interests of the class," (2) "the

11   degree to which the class has benefitted from those actions," (3) "the amount of time and effort

12   the plaintiff expended in pursuing the litigation," and (4) "and reasonabl[e] fear[s of] workplace

13   retaliation,'" *Staton*, 327 F.3d at 977 (alterations in original) (quoting *Cook v. Niedert*, 142 F.3d

14   1004, 1016 (7th Cir. 1998)).

15      These factors weigh in favor of approving Plaintiffs' requested service fees.  As the named

16   plaintiffs in this action, Plaintiffs assisted counsel by "providing extensive intake interviews

17   regarding their individual and class and collective claims and allegations; looking for and

18   reviewing relevant company documents; contacting putative class members; communicating with

19   Class Counsel regarding mediation; participating in mediation" and other tasks.  (Doc. 38 at 32.)

20   Plaintiffs' counsel submitted declarations from each named Plaintiff to support these assertions.

21   (Docs. 38-3, 38-4, 38-5.)  The class certainly benefited from Plaintiffs' efforts, as they secured the

22   present settlement.  Finally, the requested service fees are within the range of permissible service

23   fees for named plaintiffs in similar cases.  *See, e.g.*, *Barbosa*, 297 F.R.D. at 455 (approving service

24   fees of $5,000 for each of the two named plaintiffs); *Garcia v. Gordon Trucking, Inc.*, No. 1:10–

25   CV–0324 AWI SKO, 2012 WL 5364575, at *11 (E.D. Cal. Oct. 31, 2012) (approving a service

26   fee of $15,000); *Ozga v. U.S. Remodelers, Inc.*, No. C 09–05112 JSW, 2010 WL 3186971, at *3

27

28   [8] Plaintiff Villareal is to receive $10,000 more than Plaintiffs Benitez and Morales as separate consideration for settlement of Plaintiff Villareal's individual FMLA claim.  (*See* Doc. 38 at 34.)

(N.D. Cal. Aug. 9, 2010) (approving service fees of $10,000); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *17 (N.D. Cal. Apr. 22, 2010) (approving a service payment of $20,000).  Based on these considerations, the Court finds that Plaintiffs' requested service fees are reasonable.[9]

## IX.   CONCLUSION

Based on the foregoing, the Court ORDERS the following:

1) Plaintiffs' Unopposed Motion for Final Approval of Class Settlement, (Doc. 37), is GRANTED;

   a) The Court ORDERS that the settlement class, as identified in the settlement agreement, is formally certified under Federal Rule of Civil Procedure 23;

   b) The Court FINDS that the form, manner, and content of the notice to the class meets the requirements of Federal Rule of Civil Procedure 23(c)(2);

   c) The Court FINDS that the settlement is fair, adequate, and reasonable, appears to be the product of arm's length and informed negotiations, and treats all members of the class fairly;

   d) The Court GRANTS final approval of the parties' settlement agreement;[10]

   e) The Court ORDERS the parties to perform their obligations pursuant to the terms of the settlement agreement and this Order;

   f) The Court ORDERS that all class members who did not opt out of the settlement agreement have released certain claims against Defendants, as set forth in the settlement agreement;

2) Plaintiffs' Unopposed Motion for Attorneys' Fees, (Doc. 38) is GRANTED;

---

[9] The settlement also includes a fee of $6,499 to Simpluris.  (*See* Doc. 38-6 at 7.)  "Courts regularly award administrative costs associated with providing notice to the class."  *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015) (citation omitted).  Additionally, the requested fee is consistent with or lower than fees paid to administrators in similar cases.  *See, e.g.*, *Bellinghausen*, 306 F.R.D. at 266 (awarding a service fee of $16,500 to the "claims administrator"); *Vasquez*, 266 F.R.D. at 484 (approving a $35,000 fee for the settlement administrator where the class consisted of 177 members).  The Court therefore finds that the requested administrative fee of $6,499 for Simpluris is reasonable.
[10] The Court approves Valley Children's Hospital as the parties' *cy pres* beneficiary, *see Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) and, as stated at the preliminary approval stage, approves Hoyer & Hicks and United Employees Law Group as class counsel and approves the parties' implementation schedule, (*see* Doc. 37 at 33).

    a)  The Court ORDERS that class counsel shall be paid $216,666.67 in attorneys' fees and $17,703.75 in costs;

    b)  The Court ORDERS that Plaintiffs Benitez and Morales shall each be paid a $10,000 service payment, and Plaintiff Villareal shall be paid a $20,000 service payment;

    c)  The Court ORDERS that the settlement administrator, Simpluris, Inc., shall be paid a $6,499 administration fee;

3)  The Court ORDERS that this action is dismissed with prejudice, with all parties to bear their own fees and costs, except as set forth herein, in the prior orders of the Court, or in the settlement agreement; and

4)  The Court ORDERS that it retains jurisdiction over the parties, including the class members, for the purpose of construing, enforcing, and administering this Order and the settlement agreement, including any disagreements over the disbursement of the settlement fund.

IT IS SO ORDERED.

Dated:   **June 19, 2020**                    /s/ *Sheila K. Oberto*

                                        UNITED STATES MAGISTRATE JUDGE